# 20-3073(L)
# 21-2171(Con)

United States Court of Appeals
for the Second Circuit

MICHAEL MADER,

*Plaintiff-Appellant,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF OF APPELLANT**

Adam R. Shaw
George F. Carpinello
Jenna C. Smith
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
(518) 434-0600

*Counsel for Appellant*

November 19, 2021

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iv

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES PRESENTED ........................................2

STATEMENT OF THE CASE................................................................2

FACTUAL BACKGROUND ...................................................................5

   I.  Mr. Mader's Bankruptcy ...........................................................5

   II.  The Navient Loan .....................................................................7

PROCEDURAL HISTORY...................................................................14

SUMMARY OF ARGUMENT ..............................................................18

STANDARD OF REVIEW ...................................................................22

ARGUMENT ......................................................................................22

   I.  THERE IS AT LEAST A QUESTION OF FACT AS TO WHETHER THE LOAN WAS MADE UNDER A PROGRAM THAT WAS FUNDED IN PART BY THE GOVERNMENT. .........................................22

      A.  Experian Did Not Prove That The Loan Was Exempt From Discharge.....24

   II.  THE DISTRICT COURT ERRED IN RULING THAT NO PROGRAM NEEDS TO BE IDENTIFIED TO DETERMINE WHETHER A LOAN FALLS WITHIN 11 U.S.C. § 523(a)(8)(A)(i). ...............................................38

   III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE REQUEST FOR RULE 60(B) RELIEF. ...............................................47

      A.  Mr. Mader Is Entitled To Relief Under Rule 60(b)(2)...............................48

      B.  Mr. Mader Is Entitled To Relief Under Rule 60(b)(3)................................51

CONCLUSION ........................................................................................52

CERTIFICATE OF SERVICE ................................................................53

CERTIFICATE OF COMPLIANCE ........................................................54

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Adams v. Horton*,
 783 F. App'x 74 (2d Cir. 2019) ........................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ............................................................................ 24

*Bank of China v. Huang* (*In re Huang*),
 275 F.3d 1173 (9th Cir. 2002) ............................................................ 29

*Bethpage Fed. Credit Union v. Furio* (*In re Furio*),
 77 F.3d 622 (2d Cir. 1996) .................................................................. 26

*Cazenovia Coll. v. Renshaw* (*In re Renshaw*),
 222 F.3d 82 (2d Cir. 2000) .................................................................. 26

*Charlot v. Ecolab, Inc.*,
 2017 WL 11526717 (E.D.N.Y. March 29, 2017) ................................ 36

*Consol. Rail Corp. v. Darrone*,
 465 U.S. 624 (1984) ............................................................................ 42

*Crocker v. Navient Solutions LLC* (*In re Crocker*),
 941 F.3d 206 (5th Cir. 2019) .............................................................. 31

*Denton v. Hyman* (*In re Hyman*),
 502 F.3d 61 (2d Cir. 2007) .................................................................. 26

*Desclafani v. Pave-Mark Corp.*,
 2008 WL 3914881 (S.D.N.Y. Aug. 22, 2008) .................................... 36

*Donoghue v. Astro Aerospace Ltd.*,
 2021 WL 1964294 (S.D.N.Y. May 17, 2021) ..................................... 36

*Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge* (*In re Ethridge*),
 80 B.R. 581 (Bankr. M.D. Ga. 1987) .................................................. 30

iv

*Fallick v. Kehr*,
    369 F.2d 899 (2d Cir. 1966) .................................................................. 29

*Fields v. City of Chicago*,
    981 F.3d 534 (7th Cir. 2020) ................................................................. 48

*First Georgia Bank v. Halpern* (*In re Halpern*),
    50 B.R. 260 (Bankr. N.D. Ga. 1985) ................................................... 30

*Frydman v. Experian Info. Solutions., Inc.*,
    2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016) ................................... 23

*Giaimo v. Detrano* (*In re Detrano*),
    222 B.R. 685 (Bankr. E.D.N.Y. 1998) ................................................ 30

*Golden v. Nat'l Coll. Trust et al.* (*In re Golden*),
    596 B.R. 239 (Bankr. E.D.N.Y. 2019) ........................................... 30, 46

*Greensward, Inc. v. Cietek* (*In re Cietek*),
    390 B.R. 773 (Bankr. N.D.N.Y. 2008) ............................................... 29

*Grogan v. Garner*,
    498 U.S. 279 (1991) ............................................................................. 26

*Grove City College v. Bell*,
    465 U.S. 555 (1984) ............................................................................. 41

*Hayhoe v. Cole* (*In re Cole*),
    226 B.R. 647 (9th Cir. BAP. 1998) ..................................................... 30

*Holguin v. Nat'l Coll. Student Loan Trust 2006-2* (*In re Holguin*),
    609 B.R. 878 (Bankr. D.N.M. 2019) ................................................... 46

*Homaidan v. Sallie Mae, Inc.*,
    3 F.4th 595 (2d Cir. 2021) ........................................................... *passim*

*Tingling v. Educational Credit Management Corporation* (*In re Tingling*),
    990 F.3d 304 (2d Cir. 2021) ................................................................ 26

*Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*,
   609 F.3d 122 (2d Cir. 2010)................................................................. 48, 50

*Jean-Baptiste v. Educ. Credit Mgmt. Corp.* (*In re Jean Baptiste*),
   584 B.R. 574 (Bankr. E.D.N.Y. 2018).................................................. 46

*Kee v. City of New York*,
   12 F.4th 150 (2d Cir. 2021).................................................................. 24

*Ketcham v. City of Mount Vernon*,
   992 F.3d 144 (2d Cir. 2021)............................................................ 22, 24

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)................................................................. 37

*Kravitz v. Tavlarios*,
   2021 WL 5365582 (2d Cir. Nov. 18, 2021)........................................ 36

*Mader v. Experian Info. Solutions, LLC*,
   2020 WL 264396 (S.D.N.Y. Jan. 17, 2020) ........................................ 14

*Mader v. Experian Info. Solutions*, *LLC*,
   2020 WL 4273813 (S.D.N.Y. July 24, 2020) ............................. 1, 4, 15

*Mader v. Experian Info. Solutions*, *LLC*,
   2020 WL 5416337 (S.D.N.Y. Sept. 3, 2020)............................... 1, 4, 15

*Mader v. Experian Info. Solutions, LLC*,
   2021 WL 4037847 (S.D.N.Y. Sept. 3, 2021)............................... 1, 4, 17

*McDaniel v. Navient Solutions, LLC* (*In re McDaniel*),
   590 B.R. 537 (Bankr. D. Col. 2018) .................................................... 31

*McDaniel v. Navient Solutions, LLC* (*In re McDaniel*),
   973 F.3d 1083 (10th Cir. 2020)........................................................... 31

*Microbot Med., Inc. v. Alliance Inv. Mgmt. Ltd.*,
   2020 WL 5755061 (S.D.N.Y. Aug. 18, 2020)..................................... 36

*Murphy v. Snyder* (*In re Snyder*),
    939 F.3d 92 (2d Cir. 2019) ................................................................. 26

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*,
    2008 WL 904728 (S.D.N.Y. Apr. 3, 2008) ......................................... 36

*Nehara v. California Dep't of Corr. and Rehab.*,
    2013 WL 3968173 (E.D. Cal. July 31, 2013) ...................................... 49

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
    596 F.3d 112 (2d Cir. 2010) ............................................................... 36

*O'Brien v. First Marblehead Education Resources, Inc.* (*In re O'Brien*),
    419 F.3d 104 (2d Cir. 2005) .......................................................... 45, 46

*Page v. Nat'l Coll. Student Loan Trust 2006-1* (*In re Page*),
    592 B.R. 334 (8th Cir. BAP 2018) ..................................................... 46

*Palmer v. Galaxy Int'l Purchasing, LLC* (*In re Palmer*),
    2021 WL 1259258 (N.D. Ohio Mar. 31, 2021) ...................... 29, 31, 41

*Pascal v. JPMorgan Chase Bank, Nat. Ass'n*,
    2013 WL 878588 (S.D.N.Y. Mar. 11, 2013) ....................................... 36

*Rosebud Sioux Tribe v. A & P Steel, Inc.*,
    733 F.2d 509 (8th Cir. 1984) .............................................................. 49

*S.E.C. v. Wojeski*,
    752 F. Supp. 2d 220 (N.D.N.Y. 2010) ............................................... 50

*Schuman v. Aetna Life Ins. Co.*,
    2017 WL 1053853 (D. Conn. Mar. 20, 2017) ..................................... 36

*Scott v. Real Estate Fin. Grp.*,
    183 F.3d 97 (2d Cir. 1999) ................................................................. 23

*Tamasco v. Nicholls* (*In re Nicholls*),
    2010 WL 5128627 (Bankr. E.D.N.Y. Dec. 10, 2010) ......................... 29

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020)................................................................................ 24

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*,
    477 U.S. 597 (1986) ....................................................................................... 41

*U.S. v. De Kellis*,
    2010 WL 3521916 (E.D. Cal. Sept. 8, 2010) ............................................... 7

*U.S. v. University Hospital of New York*,
    729 F.2d 144 (2d Cir. 1984).................................................................. 42, 43

*Watson v. Caruso*,
    424 F. Supp. 3d 231 ..................................................................................... 23

*Wenning v. On-Site Manager, Inc.*,
    2016 WL 3538379 (S.D.N.Y. June 22, 2016) ........................................... 23

*Wiley v. Wells Fargo Bank, N.A.* (*In re Wiley*),
    579 B.R. 1 (Bankr. D. Me. 2017)............................................. 30, 40, 41

*Wilson v. Corelogic SafeRent, LLC*,
    2017 WL 4357568 (S.D.N.Y. Sept. 29, 2017)........................................... 23

*Zaratzian v. Abadir*,
    2012 WL 9512531 (S.D.N.Y. May 30, 2012) ........................................... 48

*Ziparo v. CSX Transp., Inc.*,
    15 F.4th 153 (2d Cir. 2021)........................................................................ 24

Statutes

11 U.S.C. § 523 .............................................................................................. 25

11 U.S.C. § 523(a)(8)............................................................................ *passim*

11 U.S.C. § 523(a)(8)(A)(i) ............................................................... *passim*

11 U.S.C. § 523(a)(8)(A)(ii) ......................................................................... 19

11 U.S.C. § 523(a)(8)(B) ................................................................ 19, 20, 44

11 U.S.C. § 525(c)(1) ..................................................................... 39

11 U.S.C. § 525(c)(2) ..................................................................... 39

11 U.S.C. § 727 ................................................................................ 25

15 U.S.C. § 1650(a)(8) .................................................................... 40

15 U.S.C. § 1681 ............................................................................... 1

15 U.S.C. § 1681e(b) ...................................................................... 23

20 U.S.C. § 1019A ........................................................................... 43

20 U.S.C. § 1071 .............................................................................. 40

20 U.S.C. § 1077 ................................................................... 5, 24, 27

20 U.S.C. § 1087ll ........................................................................... 44

20 U.S.C. §§ 1001 ........................................................................... 40

20 U.S.C. §§ 1091, 1094 ................................................................ 40

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 1367 ............................................................................... 1

P.L. 94-482 ...................................................................................... 20

P.L. 95-598 ...................................................................................... 44

P.L. 96-56 ........................................................................................ 44

Pub. L. No. 109-8, 119 Stat. 23 (2005) ........................................ 20

Section 221(d)(1) of the Internal Revenue Code ......................................... 9, 25, 44

Section 525 of the Bankruptcy Code ..................................................................... 39

Rules

Fed. R. App. Proc. 4(a)(1)(A) .................................................................................. 1

Fed. R. Evid. 201(b)(2) ........................................................................................... 36

Regulations

12 C.F.R. § 226.465 ................................................................................................. 40

34 CFR § 682 ........................................................................................................... 40

# JURISDICTIONAL STATEMENT

The U.S. District Court for the Southern District of New York had subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the action asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). The district court had supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367.

This Court has jurisdiction over this consolidated appeal under 28 U.S.C. § 1291, as the orders appealed from are final orders of the district court. The district court issued final orders on July 24, 2020, granting summary judgment to Defendant-Appellee Experian Information Solutions, Inc. ("Experian"), 2020 WL 4273813 (S.D.N.Y. July 24, 2020) (A-267), on September 3, 2020, denying reconsideration of the summary judgment, 2020 WL 5416337 (S.D.N.Y. Sept. 3, 2020) (A-275), and on September 3, 2021, denying an application for an indicative ruling, 2021 WL 4037847 (S.D.N.Y. Sept. 3, 2021) (A-278). Pursuant to Fed. R. App. Proc. 4(a)(1)(A), on September 9, 2020, Plaintiff-Appellant Michael Mader ("Mr. Mader") filed a notice of appeal from the summary judgment and reconsideration orders and on September 8, 2021, he filed a notice of appeal from the denial of the indicative ruling, both of which were filed within 30 days of the district court's orders.

## STATEMENT OF THE ISSUES PRESENTED

1.    Did the district court err in granting summary judgment to Experian where Mr. Mader presented evidence from lender Navient Solutions LLC's own public filings showing that Excel Grad Loan Program was an entirely private loan program and that neither he nor the school were eligible to receive federal funds and where Experian relied upon a declaration of a Navient employee whose testimony was not based on personal knowledge but rather a mere repetition of the boilerplate language in the Navient promissory note?

2.    Did the district court err in declining to grant the motion to set aside the judgment where Mr. Mader presented evidence in the form of sworn testimony that the Navient declarant had misrepresented that he had personal knowledge of the Excel Grad Loan Program and had instead relied entirely upon the boilerplate language in the Navient promissory note?

## STATEMENT OF THE CASE

The issue in this case is whether Experian inaccurately reported Mr. Mader's student loan debt as due and owing on its consumer credit reports in violation of the FCRA. The answer to that question depends upon whether Mr. Mader's student loan from Navient Solutions LLC ("Navient") was previously discharged in bankruptcy. If the loan was discharged in bankruptcy, then Experian's credit reporting was inaccurate and its actions violated the FCRA. As the district

previously held in denying Experian's motion to dismiss, Experian could not blindly rely on Navient's representation that the loan was not discharged and was still due and owing.

Student loans are subject to special treatment under the Bankruptcy Code. Some student loan debt—like certain private student loans that are not made under a federally funded program—can be discharged through bankruptcy. This case is about that particular type of student loan debt that is discharged through bankruptcy because it is not part of a federally funded program.

In its motion for summary judgment, Experian submitted no documentary evidence in support of its claim that Mr. Mader's loan was made under a federal loan program and therefore nondischargeable under 11 U.S.C. § 523(a)(8)(A)(i). It submitted no agreements with the federal government, no invoices, no financial records and no correspondence or evidence of the lender's interaction with the federal government at all. Instead, it submitted only a declaration from a Navient employee that was not based on personal knowledge and which merely repeated the boilerplate language from the loan application that purported to state that the loan was made under a program that was funded in part by the federal government. In opposition, Mr. Mader submitted Navient's publicly-filed prospectus that showed that the loan was not made under a federal program and was entirely

privately funded and Mr. Mader submitted his own declaration and proof that neither he nor the school were eligible to receive a federal loan.

In a series of decisions, the district court erroneously ruled that *as a matter of law* a reasonable jury was bound to find that Mr. Mader's loan was made under a program that was funded in part by the federal government and therefore that the loan was non-dischargeable in bankruptcy. In doing so, the district court made significant errors: (i) it erroneously ignored Mr. Mader's evidence and interpreted the movant Experian's evidence against the non-movant Mr. Mader; and (ii) it erroneously interpreted the term "program" in 11 U.S.C. § 523(a)(8)(A)(i) so broadly as to render it meaningless. The district court allowed Navient's characterization of the loan, rather than the actual nature of the loan to determine whether the loan comes within the terms of the statute. In doing so, the court granted summary judgment to Experian on that threshold issue and did not address any of the other issues in the case. The district court granted summary judgment on July 24, 2020, 2020 WL 4273813 (S.D.N.Y. July 24, 2020) (A-267), denied reconsideration on September 3, 2020, 2020 WL 5416337 (S.D.N.Y. Sept. 3, 2020) (A-275), and denied an application for an indicative ruling for Rule 60(b) relief on September 3, 2021, 2021 WL 4037847 (S.D.N.Y. Sept. 3, 2021) (A-278).

4

# FACTUAL BACKGROUND

## I.   Mr. Mader's Bankruptcy

Michael Mader is a young man who needed to borrow money to attend graduate school.  In February 2008, he sought to borrow money from Sallie Mae, Inc. (Navient Solutions LLC's predecessor) to attend the Reformed Theological Seminary in Florida.  (A-140-142).  At that time, the Reformed Theological Seminary was a private institution that did not participate in federal loan programs and was not accredited to do so under Title IV of the Higher Education Act.  (A-135).  Students attending Reformed Theological Seminary were not eligible to borrow money from the federal government to attend the school.  20 U.S.C. § 1077.

In March 2008, Sallie Mae, Inc. ("Sallie Mae") lent Mr. Mader $18,000 to attend the school.  (A-47, 136).  Mr. Mader did not borrow money from any other lender.  (A-47, 136).  Because he was attending a non-Title IV school, Mr. Mader was not eligible to borrow any money from the federal government to attend the Reformed Theological Seminary and he in fact did not borrow any money from the federal government and, more specifically, he did not borrow from the federal Stafford Loan Program.  (A-47, 136).

Mr. Mader attended the school during 2008.  After leaving school and after a period of forbearance, between 2010 and 2012, Mr. Mader made payments on the

loan.  (A-47).  Due to financial difficulty, on December 28, 2012, he filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code.  (A-136).

Mr. Mader listed the Navient (formerly Sallie Mae) debt in his petition.  (A-157).  Navient never appeared in the bankruptcy proceeding to make a claim and never contested the discharge.  On April 16, 2013 the U.S. Bankruptcy Court for the Southern District of New York (Chapman, B.J.) issued an order discharging Mr. Mader's debts.  (A-159).  The discharge order provides "It Is Ordered That" the "Debtor is released from all dischargeable debts" and that "creditors whose debts are discharged by this order . . . are enjoined from instituting or continuing any action, employing any process or engaging in any act to collect such debts as personal liabilities of the Debtor(s)."  (A-159).

The explanation of the discharge accompanying the discharge order states that "Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed."  (A-160).  It further explains that "Debts for most student loans" are not discharged, thereby notifying debtors and creditors alike that some debts for student loans are discharged.  (A-160).

Navient was provided notice of the discharge.  (A-161).

Immediately after receiving the order of discharge, Navient started sending bills and making calls to Mr. Mader, seeking to have him continue paying the loan. Navient repeatedly told Mr. Mader that his student loan was not discharged in

bankruptcy and that his failure to pay would hurt his consumer credit score. (A-136). Because of Navient's collection efforts and despite the bankruptcy discharge Mr. Mader made payments on the loan from June 2013 through April 2017. (A-136).

In January 2019, Mr. Mader obtained a copy of his consumer credit report from Experian. (A-137). It derogatorily reported that the Navient loan was "charged off," "22,785 written off," "8,519 past due," and had a "recent balance $22,890." (A-137, 165). At least eight different potential creditors viewed that derogatory information and made 30 inquiries into his credit file. (A-137).

## II. <u>The Navient Loan</u>

At the time Navient's predecessor Sallie Mae, Inc. made the loan, it was a private, for-profit corporation. It was not a governmental entity nor a non-profit. *U.S. v. De Kellis*, No. S-09-1852, 2010 WL 3521916, at *6 n.6 (E.D. Cal. Sept. 8, 2010).

When he applied for the loan, Mr. Mader filled out a loan application with an attached promissory note. The loan application described the loan as an "EXCEL Grad Loan." [1] (A-140). A section of the application subtitled "What are

---

[1] Navient and Experian appear to use "Excel Grad" and "Grad Excel" interchangeably. The parties have treated those two names as referring to the same thing and we use "Excel Grad" throughout for the Court's convenience except where it is quoted directly from evidence.

7

EXCEL Grad Loans?" explains that "EXCEL Grad Loans are flexible, **private education loans** sponsored by Nellie Mae[2] that **complement** the Federal Stafford Loan program." (A-142) (emphasis added). "They are designed for graduate and professional students who have borrowed their maximum Federal Stafford Loan amounts but still have remaining college expenses." (A-142). The application notes that there are "program specific EXCEL Grad loans", such as LawEXCEL and MD-EXCEL loans, and that "[o]ther disciplines of study are covered by the GradEXCEL program." (A-142).

Later in the promissory note there is a further description of the Excel Grad program that distinguishes it as a private program distinct and wholly separate from any federal loan program. Section M.(9) of the application and promissory note provides "Notice to Borrowers of Available Financing Options Under Title IV of the Federal Higher Education Act." (A-148-149). It is standard, statutorily required language that advises borrowers to first determine whether they are eligible for lower-cost federal loans before they take out private loans:

> "[u]sually, the terms available under these [Title IV] **federal programs** are more advantageous to the borrower than the terms available under **private loan programs.** Borrowers should therefore maximize their use **of these federal programs** before obtaining private loans. All borrowers are advised to discuss **federal financing**

---

[2] Sallie Mae, Inc. appears to have continued to use the Nellie Mae tradename because the Nellie Mae Corporation was sold to Sallie Mae, Inc. in 1999 and was merged in SLM Originations Corporation in 2012 and thus was not in existence at the time of the loan. (A-40-41).

**options and programs** and their potential eligibility with their school before applying for a **private student loan."**

(A-148) (emphasis added). The promissory note then lists the federal loan programs that are available to students, including the Federal Family Education Loan Program ("FFELP") and the specific constituent loans that are part of the FFELP, and the William D. Ford Federal Direct Loan Program and the constituent loans that are part of that federal program. (A-148). Notably, neither the Excel Grad Program nor Excel Grad loans are described as in any way connected to the federal loan programs available.

The only other place that the application and promissory note discusses federal loan programs is in section M.(6) entitled "Not Dischargeable", which almost perfectly quotes 11 U.S.C. § 523(a)(8)(A)(i). (A-146). It is obviously boilerplate language inserted to try to protect a lender from a debtor's later bankruptcy petition and states that "I understand that this loan is an education loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units and, therefore, is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986, 26 U.S.C. § 221(d)(1), and is not dischargeable in bankruptcy except pursuant to 11 U.S.C. § 523(a)(8)." (A-146).

This boilerplate statement is false because Navient has always treated its wholly private Excel Grad program as distinct and separate from each and every

federal loan program. For example, in a prospectus filed with the SEC that described the Sallie Mae's loan programs and loans, (A-114-120), Navient explained that it originated federal loans and also originated private loans. (A-113-114). The loans originated through the FFELP were "guaranteed . . . by certain federal guarantors pursuant to a guarantee agreement." (A-114-115).

The prospectus then states, "**In addition to the FFELP loans** originated under the Higher Education Act, the sellers and other affiliates of Navient have developed student loan programs **that are not federally guaranteed** for . . . graduate students ("Private Graduate Loans") … which can be used by borrowers to supplement their FFELP loans in situations where the FFELP loans do not cover the cost of education or to cover education at non-Title IV institutions. . . . Private Graduate Loans . . . **are marketed as EXCEL Grad Loan$^{(SM)}$.**" (A-115) (emphasis added).

Navient adds that "[t]he holders of Private Education Loans are not entitled to receive any federal assistance with respect thereto." (A-116).

For loans that it services but did not originate, Navient explains that it "acquired . . . EXCEL Loans funded by several commercial banks in the United States, [which] provide . . . graduate students supplemental financing to help fund the cost of attending a[]graduate institution. . . . **They are not guaranteed by any**

**federal guarantor, or by any governmental agency or by any private guarantor**." (A-116) (emphasis added).

Navient notes that some securitization trusts may include the two distinct types of loans—federal loans and private loans—and then states that the two types of loans come from different programs. Navient makes clear to that they are from different loan programs because it provides a detailed description of the program description for FFELP in Appendix A for federal loan programs (A-114-115, 122) and for private loan programs in Appendix B (A-119, 129).

Appendix A describes in detail the distinct terms and parameters of the Federal Family Education Loan **program** and the Stafford Loan **program** and the loans that could be made under those programs. (A-122-128). Loans under the FFELP program or Stafford program can only be made to eligible students at eligible, Title IV institutions. (A-122-127). They have their own specific eligibility criteria, terms of repayment and forbearance requirements. (A-122-128). The descriptions of the programs do not include any reference to any private loan, to any Excel Grad loan or to any Grad EXCEL program. (A-122-128).

Navient separately lists the distinct terms and parameters of its private loan programs in Appendix B. (A-129). There it explains that the "EXCEL Grad Loan . . . GRADEXCEL, [and others] (collectively, 'EXCEL Loans') provide **private** supplemental **funding** for undergraduate, graduate, and health professional

students. The . . . EXCEL Loan **programs** are referred to collectively as the "Undergraduate and Graduate Loan **Programs**." (A-129) (emphasis added). According to Navient, "since 1999 for the EXCEL Loan **program**, the Student Loan Marketing Association, prior to its liquidation, Navient Solutions and, prior to its merger with Navient Solutions, Sallie Mae Servicing L.P. and its affiliates have performed all application and origination functions for these loan programs on behalf of the originating lenders." (A-129) (emphasis added). Loans made under the Excel Grad Loan program have their own specific eligibility criteria, terms of repayment and forbearance requirements. (A-129-134). The descriptions of the Excel Grad programs do not include any reference to any FFELP program, Stafford program, or any federal loan at all. (A-129-134).

Notwithstanding these evidentiary admissions of Navient, in support of its motion for summary judgment, Experian submitted the declaration Mr. Zemetro, a Senior Director of Core Processing of Navient. (A-40). He declared that Mr. Mader's Excel Grad loan "was also made under a program that was funded, in part, by non-profit organizations, including governmental units. Specifically, in addition to making private loans, that program also makes Stafford loans, which are guaranteed or funded by non-profits (including governmental units) under the Federal Family Education Loan Program." (A-41, ¶ 4). He stated that the two loans are made under the same program because "[a]s a condition to receiving

12

private loan funds under this program, a borrower must have first maximized his or her Stafford loan amounts under this program." (A-41, ¶ 4).

Experian submitted no other proof of the existence of any program—no contracts, no invoices, no financial records, no agreements, no descriptions, no marketing material, no emails and no correspondence.

Mr. Zemetro's declaration was not accurate. Mr. Zemetro later admitted in a deposition in another action that he had no personal knowledge about the Excel Grad program or Mr. Mader's loan or about any program-related documents. (A-203-204 (30:02-37:22), 206 (42:07-45:19), 208-211 (52:03-53:22)). He admitted that his only knowledge of any supposed connection between Excel Grad loans and Stafford loans program was the language in Mr. Mader's application and promissory note. (A-204, 211). Mr. Zemetro admitted that his statement in his declaration was solely a recitation of the boilerplate language in Mr. Mader's application and promissory note. (A-211).

Another deponent in that action, Navient's Rule 30(b)(6) witness, Patty Peterson confirmed that Excel Grad loans are funded wholly by private sources and that any coupling with Stafford loans was a mere "marketing channel." (A-250 (112:04-22).

In support of its summary judgment motion, other than Mr. Zemetro's declaration parroting the language of the promissory note, Experian submitted no

13

other evidence that Mr. Mader's loan was made under a program that was funded in whole or in part by a governmental entity. (A-40-43).

## PROCEDURAL HISTORY

Mr. Mader commenced this action on April 29, 2019. On January 17, 2002, this district court granted in part and denied in part Experian's motion to dismiss the complaint, dismissing certain claims of willfulness. *Mader v. Experian Info. Solutions, LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 264396 (S.D.N.Y. Jan. 17, 2020). On February 7, 2020, Mr. Mader filed an amended complaint, including adding allegations to support his willfulness claims. (A-15).

On February 27, 2020, Experian moved for summary judgment. The only evidence Experian submitted in support of its argument that Mr. Mader's loan was part of a federally funded program was the application and promissory note and Mr. Zemetro's declaration. (A-40). On March 19, 2020, Mr. Mader filed an opposition to the motion for summary judgment and submitted and explicitly referred to the Navient Prospectus and to his own declaration as evidence showing that Mr. Mader's loan was not made under a program that was funded in part by the federal government and that neither he nor the school were eligible to receive a loan from a federal program. (A-55, 82, 104, 112-136).

On July 24, 2020, the district court granted the motion for summary judgment in Experian's favor based solely on its finding with respect to the

14

threshold issue of whether the loan was discharged in bankruptcy. *Mader v. Experian Info. Solutions, LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 4273813 (S.D.N.Y. July 24, 2020); (A-267). Specifically, quoting almost verbatim from the Zemetro declaration, the district court found that it was "undisputed" that Mr. Mader's "loan was made under a program that also makes Stafford Loans, which are guaranteed or funded by nonprofits (including governmental units) under the Federal Family Education Loan Program." (A-271). In holding that this fact was "undisputed," the district court relied on the Zemetro Declaration and language in the application and promissory note. (A-272). The district court ignored and never acknowledged that Mr. Mader submitted and explicitly referred to the Navient prospectus. (A-271-273). The district court thus improperly took a disputed issue of fact away from the jury and decided it as a matter of law based solely on the movant's evidence. Indeed, as described more fully below, the Zemetro declaration was not competent evidence, unlike the publicly-filed Navient prospectus submitted by Mr. Mader—which makes the evidence one-sided in favor of Mr. Mader.

Thereafter, Mr. Mader moved for reconsideration. On September 3, 2020, the district court denied the motion for reconsideration. *Mader v. Experian Info. Solutions*, *LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 5416337 (S.D.N.Y. Sept. 3, 2020); (A-278). The district court agreed that Navient was not a government entity

(A-276); that the Excel Grad loan was not made under the Federal Family Education Loan Program or Stafford Programs (A-276); and stated that the boilerplate language in the promissory note was "not used as substantive evidence of the dischargeability of the loan." (A-277). The district court further ruled that Experian need not identify the "program" at issue to prove as a matter of law that the loan was "made under any program funded in whole or in part by a governmental unit" for dischargeability under § 523(a)(8)(A)(i) of the Bankruptcy Code. (A-277). Despite the fact that Mr. Mader again cited the Navient prospectus and advised the court that it had previously been overlooked and that he and the school did not receive—and were not eligible—to receive a loan from a federal program, the district court again ignored the evidence, making no mention of it at all, and denied the motion for reconsideration. (A-177, 179, 184-185).

Mr. Mader filed a notice of appeal from the summary judgment and reconsideration orders on September 9, 2020, resulting in Case No. 20-3073 (2d Cir.).

In the interim, Mr. Mader's counsel had the occasion to take Mr. Zemetro's deposition in another case[3] and determined that Mr. Zemetro misrepresented his knowledge of the Excel Grad program. Contrary to his declaration, Mr. Zemetro had no knowledge of the Excel Grad program or the Excel Grad loan's connection

---

[3] *DiDonato v. GC Services Ltd. P'ship, et al.*, No. 20-cv-02154 (LGS) (S.D.N.Y.).

16

to any program that was funded in part by the government. (A-203-211). He admitted that the statements in his declaration to the effect that the Excel Grad loan was part of a federally funded program was based entirely upon his reading of the boilerplate in the promissory note. (A-211).

Mr. Mader moved, and the district court allowed, the deposition transcripts and documents from that other case to be used in this case as part of a motion for an indicative ruling for relief from judgment under Rule 60(b). (A-11). On February 3, 2021 this Court extended Mr. Mader's time to appeal until after the indicative ruling.

On September 3, 2021, the district court ruled that it would not grant Rule 60(b) relief in the indicative ruling. *Mader v. Experian Info. Solutions, LLC*, No. 19 CIV. 3787 (LGS), 2021 WL 4037847 (S.D.N.Y. Sept. 3, 2021); (A-278). The court based its ruling in part on its reiteration that Experian's "motion for summary judgment was granted because the only evidence in the record -- the Navient Loan's promissory note and Zemetro's Declaration -- supported Defendant's assertion that the Navient Loan was made under a program that includes loans funded in part by non-profit organizations, including governmental units, and therefore was exempt from discharge in bankruptcy [and that] Plaintiff identified no contrary evidence, beyond his subjective belief that the Navient Loan 'was not made or guaranteed by a government or non-profit' to show a dispute of material

17

fact.'" (A-280-281). The district court added that "[w]ithout contrary evidence, Plaintiff cannot show that Defendant's motion for summary judgment would have been denied, even if the Court had considered Zemetro's Deposition about the basis for his statements." (A-281). The district court thus inexplicably continued to ignore the Navient prospectus Mr. Mader submitted in opposition to summary judgment and again brought to the court's attention in his motion for reconsideration and the motion for the indicative ruling. It then denied the motion for an indicative ruling in part on the erroneous basis that Mr. Mader had submitted no contrary evidence, stating "Without contrary evidence, Plaintiff cannot show that Defendant's motion for summary judgment would have been denied, even if the Court had considered Zemetro's Deposition about the basis for his statements." (A-281).

On September 8. 2021, Mr. Mader filed a notice of appeal from the indicative ruling, resulting in Case No. 21-2171 (2d Cir.). This Court consolidated the two appeals, making case No. 20-3073 the lead case.

## **<u>SUMMARY OF ARGUMENT</u>**

Experian's liability in this case depends upon whether Mr. Mader's loan was discharged in bankruptcy. Experian reported the debt as still due and owing despite Mr. Mader's discharge in bankruptcy.

18

Section 523(a)(8) of the Bankruptcy Code sets forth the specific bases on which student loans may be treated as nondischargeable. As this Court stated in *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021), the statute's terms are to be narrowly construed in favor of the debtor and they must be read so as to give effect to each of its subdivisions. In *Homaidan*, this Court rejected Navient's attempt to obtain nondischargeability for its entirely private loans under § 523(a)(8)(A)(ii). *Id.* at 603-04. Navient made that argument because its loans clearly could not meet the conditions of § 523(a)(8)(B) which set forth the very particular basis under which wholly private loans may be treated as nondischargeable. This Court noted that, if it accepted Navient's argument with regard to its strained interpretation of § 523(a)(8)(A)(ii), it would render the restrictions of § 523(a)(8)(B), as well as those of §523(a)(8)(A)(i), meaningless. *Id.*

This case raises substantially similar issues to those considered in *Homaidan*. In this case, Navient is attempting to collect on and Experian is reporting post-discharge, on a private loan that unquestionably cannot meet the conditions of § 523(a)(8)(B). Thus, Navient has attempted to shoehorn loans like Mr. Mader's into § 523(a)(8)(A)(i). It does this by placing in its promissory notes boilerplate language which merely asserts that the private loan, which is totally funded by private sources in a private loan program, is, nonetheless, a government

19

loan within the terms of §523(a)(8)(A)(i) because it is "made under a program that includes Stafford Loans and other loans and which is funded in part by nonprofit organizations, including governmental units and, therefore, is a qualified education loan. . . and is nondischargeable in bankruptcy. . ." But Navient cannot convert what is a purely private loan program into a one partly funded by government by *ipse dixit*. In order to come within § 523(a)(8)(A)(i), the loan program must be funded at least in part by governmental money as a matter of objective fact. That is simply not the case here.

Congress adopted what has become § 523(a)(8)(A)(i) long before it gave any nondischargeability status to private loans. P.L. 94-482, Oct. 12, 1976. When it adopted that provision, Congress intended to preserve the corpus of federal and nonprofit money that was available to be loaned to needy students. Only much later in 2005, did Congress extend nondischargeability to private loans and *only* those private loans that come within terms of § 523(a)(8)(B), that is, loans made to individuals attending Title IV institutions which do not exceed the student's cost of attendance. Pub. L. No. 109-8, 119 Stat. 23 (2005). The loan that Navient made to Mr. Mader clearly does not come within the terms of subdivision (B) because Mr. Mader did not attend a Title IV institution. Nonetheless, Navient is collecting and Experian is reporting, post-discharge, on Mr. Mader's loan by merely asserting in its boilerplate that this purely private loan was made under a program that includes

20

federal Stafford Loans. Allowing Navient to rely on this self-created exemption to discharge obviously renders subdivision (B) meaningless, which this Court warned against in *Homaidan*. *Homaidan*, 3 F.4th at 602-603.

This issue arose in this case when Experian moved for summary judgment relying solely on Navient's self-described federal loan "program," as devised in its boilerplate [and] the Zemetro declaration. In opposition to the motion, Mr. Mader submitted Navient's publicly filed SEC statements that demonstrated that the Excel Grad program was not part of a federal program and that neither Mr. Mader nor the school were eligible to receive funds from a federal program. (A-55, 104, 112-134). The district court agreed that the boilerplate language was an impermissible pre-petition waiver of bankruptcy rights and then completely ignored Mr. Mader's evidence and found that the Navient declaration was undisputed. The district court improperly weighed the evidence and failed to view the evidence in the light most favorable to non-movant Mr. Mader, thereby impermissibly invading the province of the jury. That was particularly wrong because exemptions to bankruptcy discharge are to be narrowly construed. *Homaidan*, 3 F.4th at 600.

Then, when Mr. Mader later obtained evidence that the Navient declaration misrepresented that the declarant had personal knowledge that the loan was made under a partly federally funded program and that Mr. Zemetro had merely parroted

21

the language of the promissory note after his counsel provided it to him, the district court further erroneously ruled that this did not warrant relief from the judgment.

In the end, there is at least a question of fact as to whether the loan was exempt from discharge as a loan made under a partially government-funded program (if not evidence entirely in Mr. Mader's favor) and the district court impermissibly ruled on this issue as a matter of law.

## STANDARD OF REVIEW

This Court reviews grants of summary judgment de novo and construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148-49 (2d Cir. 2021). Denials of motions for indicative rulings are reviewed for an abuse of discretion. *Adams v. Horton*, 783 F. App'x 74, 75 (2d Cir. 2019) (summary order).

## ARGUMENT

**I.    THERE IS AT LEAST A QUESTION OF FACT AS TO WHETHER THE LOAN WAS MADE UNDER A PROGRAM THAT WAS FUNDED IN PART BY THE GOVERNMENT.**

Mr. Mader brought this action against Experian for violating the FCRA. The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report

relates." 15 U.S.C. § 1681e(b). New York's credit reporting law has nearly identical language as this provision and the Second Circuit has advised that "the[se] two statutes must be construed in the same way." *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999).

"The elements of a negligence claim under [the FCRA, § 1681e(b)] are '(1) inaccuracy, (2) failure to follow reasonable procedures, (3) actual damages, and (4) causation.'" *Wilson v. Corelogic SafeRent, LLC*, 14 Civ. 2477, 2017 WL 4357568, at *3 (S.D.N.Y. Sept. 29, 2017) (internal quotation omitted).

Here, because Mr. Mader claims that Experian inaccurately reported his discharged student loan debt as past due, the inaccuracy element requires a determination of whether the student loan was in fact discharged in bankruptcy.

Experian moved for summary judgment on the ground that its reporting was accurate. Accordingly, Experian bears the burden of proving that its reporting was accurate as a matter of law, *i.e.*, that the debt was not discharged. *See Watson v. Caruso*, 424 F. Supp. 3d 231, 238 and 245 (D. Conn. 2019); *Wenning v. On-Site Manager, Inc.*, 14-cv-9693, 2016 WL 3538379, at *7 and *10-14 (S.D.N.Y. June 22, 2016); *Frydman v. Experian Info. Solutions., Inc.*, No. 14-cv-9013, 2016 WL 11483839, at *8 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 5661596 (S.D.N.Y. Sept. 30, 2016). Stated in the affirmative, Experian

had to demonstrate that no reasonable juror could find that the debt was discharged.

In evaluating Experian's motion, the evidence must be viewed in the light most favorable to Mr. Mader. *Ziparo v. CSX Transp., Inc.*, 15 F.4th 153, 158 (2d Cir. 2021); *Ketcham*, 992 F.3d at 148-49. All reasonable inferences from that evidence and all ambiguities must be drawn in Mr. Mader's favor. The court's role is not to weigh the evidence or to determine the "truth," it is to evaluate whether any reasonable juror could find in Mr. Mader's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (citations and quotations omitted); *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 87 (2d Cir. 2020).

## A.     Experian Did Not Prove That The Loan Was Exempt From Discharge

It is undisputed that Mr. Mader borrowed $18,000 from Navient (then known as Sallie Mae) to attend the Reformed Theological Seminary. It is also undisputed that the Reformed Theological Seminary is not a Title IV institution eligible to receive any federal education funds and that Mr. Mader could not, and did not, borrow any federal funds. 20 U.S.C. § 1077; (A-47, 135-136, 140-142).

Thus, neither Navient nor any student lender could make a loan to Mr. Mader using federal funds.

It is also undisputed that the bankruptcy court ordered Mr. Mader's debts discharged and that Navient did not file a claim in the bankruptcy nor to this day has it ever challenged the finding of discharge. (A-159-161).

Under 11 U.S.C. § 727, a debtor who completes the bankruptcy process is granted a discharge order which "discharges the debtor from all debts that arose before the date of the order" unless the debt is exempted from discharge under 11 U.S.C. § 523. (A-159).

As this Court recently stated regarding discharge exemptions for student loans under § 523(a)(8), "[t]he Bankruptcy Code lays out several categories of educational debt that cannot be discharged in bankruptcy absent a showing of undue hardship." *Homaidan*, 3 F.4th at 600.

Section 523(a)(8) excepts from discharge:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8). "This dense language means that three categories of educational debt cannot be discharged in bankruptcy: (1) loans and benefit overpayments backed by the government or a nonprofit; (2) obligations to repay funds received as an educational benefit, scholarship, or stipend; and (3) qualified private educational loans." *Homaidan*, 3 F.4th at 600-01.

"Because the federal bankruptcy system is designed to 'aid the unfortunate debtor by giving him a fresh start in life,' discharge exceptions such as § 523(a)(8) are 'confined to those plainly expressed in the Bankruptcy Code.'" *Id*. at 600 (citations omitted).

"[E]xceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *Murphy v. Snyder* (*In re Snyder*), 939 F.3d 92, 101 (2d Cir. 2019) (quoting *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007)); *Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F.3d 622, 624 (2d Cir. 1996). The party seeking to invoke the exception bears the burden of proving an exception applies. *Grogan v. Garner*, 498 U.S. 279, 283 (1991); *In re Hyman*, 502 F.3d at 66; *Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 90 (2d Cir. 2000).[4] That is especially so where, as here, the party

---

[4] *Homaidan* made clear that there is no "presumption" that student loan debt is exempt from discharge. *Homaidan*, 3 F.4th at 599-601. This Court's recent decision in *Tingling v. Educational Credit Management Corporation* (*In re Tingling*), 990 F.3d 304 (2d Cir. 2021) is not to the contrary. In *Tingling*, there was no dispute that the loan was a federal loan that fit within § 523(a)(8)(A)(i)—in

seeking to invoke the exception is seeking summary judgment against a debtor on the basis that a debt has not been discharged as a matter of law.

Here, Experian claims that the Excel Grad loan was exempt from discharge because it was made under a program funded in part by the federal government. Experian's sole contention is that the Excel Grad loan was made under a program that also makes Stafford loans, which are funded by the federal government. But of course, Mr. Mader was not eligible for any loans using federal money and the Reformed Theological Seminary could not receive any payments from a federal loan program. 20 U.S.C. § 1077. Experian's (and the district court's) sole basis for determining that the loan is non-dischargeable is Mr. Zemetro's declaration, which states: "Specifically, in addition to making private loans, that program also makes Stafford loans . . . ." (A-41 (¶ 4), 271-272). Experian's assertion is simply not true.

The only way for Experian's assertion could be true is if the Excel Grad loan and Stafford loans were made under the same loan program. But there is no proof of that and in fact all the proof demonstrates that they were *not* made under the same program at all. As described below, the proof is that Excel Grad loans and Stafford loans are made under distinct and separate programs: one is funded solely by private sources and one is funded solely from federal sources.

---

fact, it was issued by the Department of Education itself. Thus, the only issue was whether the plaintiff could show undue hardship under the *Brunner* test. *Id.* at 309.

27

The parties and the district court agreed that Navient made the loans and that Navient was not a governmental entity. (A-276). The parties and the district court agreed that the Excel Grad loan itself was a private loan. (A-41, 129-134, 273, 276). The parties and the district court also agreed that the Excel Grad loan itself was not made under a federal program such as the Federal Family Education Loan Program or under the Stafford Loan Program. (A-41, 122-134, 271, 273, 276).

It is also undisputed that the Excel Grad program itself is a wholly private program, funded entirely with private money. (A-41, 129-134). It is undisputed that Stafford loans are wholly federal loans and that the Stafford Loan Program is a wholly federal program. (A-122-128, 276). It is undisputed that Mr. Mader did not receive any Stafford loan. (A-47, 136).

Notably, Experian submitted no documentary proof that the Excel Grad loan was made under a program that also makes Stafford loans. Experian submitted no contracts, no agreements, no financial records, no invoices, no descriptions, no marketing material, no emails and no correspondence that purports to identify or describe any relationship between Excel Grad loans and a program that also makes Stafford loans.

The only evidence that Experian submitted to support its motion for summary judgment was the application and promissory note and the declaration of John Zemetro. (A-40-43).

But the application and promissory note provide no evidentiary support for Experian's motion.  They contain only the boilerplate provision that the loan was made under a program that includes Stafford loans and other non-profit or governmental loans and is therefore nondischargeable.  However, parties cannot agree in a loan document that a loan is exempt from discharge.  Provisions in agreements about the nondischargeability of the debt are considered pre-bankruptcy waivers of dischargeability.  Pre-bankruptcy waivers of dischargeability are unenforceable and against public policy.  *See Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) ("[W]e have no doubt that the Bankruptcy Act expresses a strong legislative desire that deserving debtors be allowed to get a fresh start. We agree, as the dissent points out, that an advance agreement to waive the benefits of the Act would be void."); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-780 (Bankr. N.D.N.Y. 2008) (holding that a "prepetition waiver of dischargeability of a debt is against public policy"); *Palmer v. Galaxy Int'l Purchasing, LLC* (*In re Palmer*), Adv. Pro. No. 15-05073, 2021 WL 1259258, at *10 (N.D. Ohio Mar. 31, 2021) (holding that boilerplate language purporting to make a loan nondischargeable is ineffective: "Prepetition, prospective waivers of discharge or dischargeability of particular debts are unenforceable in bankruptcy court."); *Bank of China v. Huang* (*In re Huang*), 275 F.3d 1173, 1177 (9th Cir. 2002); *Tamasco v. Nicholls* (*In re Nicholls*), No. 10-70650, 2010 WL 5128627, at

*2 (Bankr. E.D.N.Y. Dec. 10, 2010); *Giaimo v. Detrano* (*In re Detrano*), 222 B.R. 685, 688-89 (Bankr. E.D.N.Y. 1998); *Hayhoe v. Cole* (*In re Cole*), 226 B.R. 647, 651-52 (9th Cir. BAP. 1998); *First Georgia Bank v. Halpern* (*In re Halpern*), 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985), *aff'd*, 810 F.2d 1061 (11th Cir. 1987); *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge* (*In re Ethridge*), 80 B.R. 581, 586 (Bankr. M.D. Ga. 1987).

The reason for this public policy is obvious: If a creditor could obtain a waiver of dischargeability by including boilerplate language in every promissory note, then every creditor would do so, and "creditors would essentially have the power to nullify the fresh start provided by the Bankruptcy Code." *In re Ethridge*, 80 B.R. at 586.

The ineffective boilerplate language in the promissory note demonstrates another important point. A party cannot bootstrap itself into one of the exceptions contained in § 523(a)(8) by getting a debtor to agree to boilerplate contentions in the promissory note. A loan either comes within the terms of § 523(a)(8) as a matter of fact or it does not. *Golden v. Nat'l Coll. Trust et al.* (*In re Golden*), 596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019) ("[i]f that language [in the promissory note] alone were sufficient, then it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code."); *Wiley v. Wells Fargo Bank, N.A.* (*In re Wiley*), 579 B.R. 1, 7 (Bankr. D.

Me. 2017) (stating that pre-printed language in a promissory note which stated that an education loan is non-dischargeable is not demonstrative of non-dischargeability absent evidence that the loan fits within § 523(a)(8)); *McDaniel v. Navient Solutions, LLC* (*In re McDaniel*), 590 B.R. 537, 545 (Bankr. D. Col. 2018) ("'Educational' loans or 'student loans' are not nondischargeable simply because they are labeled as such; they must meet one of the criteria set forth in Section 523(a)(8)."), *aff'd*, 973 F.3d 1083 (10th Cir. 2020); *In re Palmer*, 2021 WL 1259258 at *10-11.

A party cannot create or dictate the attributes of a program or a loan merely by stating that such a program exists.  A loan cannot take on the attributes of a loan made under a program that is funded in part by the government merely because someone says those words.  An exception under § 523(a)(8)(A)(i) has to exist as a matter of objective fact.  Saying that a loan is a made under a partially federally funded program does not make it one.  *See, e.g.*, *Crocker v. Navient Solutions LLC* (*In re Crocker*), 941 F.3d 206, 217 (5th Cir. 2019) ("In summary, Subsection (A)(i) applies to loans, etc. in which a governmental unit or a nonprofit institution **had a defined role**.").  (emphasis added).

The district court agreed with the public policy proscription and ruled that the court did not rely on the boilerplate in the promissory note as substantive evidence in making its ruling.  (A-277).  But without the boilerplate and only with

31

Zemetro's declaration, which was based entirely upon his parroting of the boilerplate, there is no evidence in the record establishing that the loan was part of a program funded by the federal government.

Indeed, Mr. Zemetro's testimony in the *DiDonato* case, which was included here on the motion for an indicative ruling and to set aside the judgment, demonstrates his complete lack of independent knowledge of the loan program.

Mr. Zemetro was a Senior Director of Core Processing for Navient for eight years, which did not include the time when the loan was made. (A-40, ¶ 2). He stated that the "Loan was also made under a program that was funded, in part, by non-profit organizations, including governmental units. Specifically, in addition to making private loans, that program also makes Stafford loans, which are guaranteed or funded by non-profits (including governmental units) under the Federal Family Education Loan Program." (A-41, ¶ 4). Mr. Zemetro did not identify what program he was talking about that had these attributes. (A-41). He did not provide any background or information on its creation, operation or parameters. (A-41). The only other thing he added about this purported partially-governmentally funded program that issued private loans was that "[a]s a condition to private receiving loan funds under this program, a borrowers must have first maximized his or her Stafford loan amounts under this program." (A-41, ¶ 4). Mr. Zemetro testified that he was unaware of Mr. Mader's loan and, in fact, did not

know "any detail" of the Excel Grad Program, (A-203 (32:04-14)) or any Navient private loan program. (A-197-198 (09:02-10:02); 203-206 (32:04-45:19); 208-211 (50:02-65:02)).

He testified that before being shown Mr. Mader's promissory note, he could not recall ever seeing an Excel Grad promissory note. (A-214 (76:20-24)). His job duties did not involve the creation, maintenance, or execution of loan programs and he testified that his knowledge of such programs was passing at best. (A-197 (09:02-22), 203 (32:04-14)).

Mr. Zemetro acknowledged that his only knowledge of either the Excel Grad Program or, specifically, Mr. Mader's loan, came solely from reading the promissory note which was shown to him by the in-house Navient attorney who drafted the declaration. He testified that he relied totally on the self-serving boilerplate language contained in the Navient promissory note, which asserted that the loan was being made pursuant to a program that also makes Stafford Loans. (A-204 (36:23-37:13), 211-215 (62:21-81:08), 217 (87:08-88:22)).

Mr. Zemetro has absolutely no knowledge about any governmental involvement in the Excel Grad Program. Indeed, he conceded that that he had no idea of any governmental involvement in any of Navient's private loan programs. (A-218-219 (93:22-95:03)). His only basis for asserting governmental involvement came from reading the promissory note. (A-215 (79:04-81:16)).

Mr. Zemetro also had absolutely no personal or independent knowledge to support his assertion that "[a]s a condition to receiving private loan funds under this program, a borrower must have first maximized his or her Stafford Loan amounts under this program."  (A-41 ¶ 4, 205-206 (39:07-40:09), 208 (50:09-52:09), 214 (75:08-12)).

The fact that the Excel Grad Loan Program has always been an entirely private loan program with absolutely no federal funding of any kind was also confirmed by the deposition of Patricia Peterson, a Rule 30(b)(6) witness, offered by Navient in the *DiDonato* action.  She testified that the Excel Grad Loan Program is funded solely by private sources.  (A-242 (78:09-79:07)).  Excel Grad Loans, like Navient's other private loans, are based on credit-risk pricing, unlike federally funded or guaranteed loans.  (A-241-242 (74:14-76:20)).  Excel Grad Loans are neither funded nor guaranteed by a governmental unit, and while they may have been funded by a nonprofit at one time, Ms. Peterson could not identify the time period when this might have happened.  (A 229-230 (28:18-33:01), 232 (40:20-41:21), 236 (54:07-54:23)).  Peterson also acknowledged that the coupling of a private Excel Grad Loan with a Stafford Loan was a "marketing channel" used by Navient to induce borrowers to take out private and governmental loans.  (A 246-250 (95:13-19; 101:15-102:10; 106:18-107:11; 111:20-112:22), 264).  Despite this marketing, Peterson admitted that the Excel Grad Loan at all times remained

an entirely private loan. (A-241 (76:09-20)). Peterson also admitted that providing the borrower both an Excel Grad Loan and a Stafford Loan did not change in any way the private nature of the Excel Grad Loan. (A-248-253 (104:5-105:3; 106:4-14; 113:6-114:20; 117:22-118:24; 119:17-120:12; 123:5-20)). Whether or not it was marketed with a federally guaranteed or funded loan, each Navient private loan bears no federal guarantee of any kind. (A-254 (127:2-15)).

Nonetheless, the district court, after being presented with both the Zemetro and Peterson testimony, continued to rely on Zemetro's declaration and to find as a matter of law that no reasonable juror could ever find that there was a genuine issue of fact as to whether the Excel Grad loan was made under a program that was funded in part by the federal government. This ruling was improper and erroneous. The district court's decisions cannot stand.

The district court was wrong to make that finding as a matter of law because Mr. Mader submitted evidence that disputed Mr. Zemetro's statements and showed that the loan was not made under any federally funded program at all. Mr. Mader submitted Navient's own statements to the SEC and to the public in which Navient admitted that the Excel Grad loan was not part of any federally funded program; that the Excel Grad Program was not funded in part by any governmental entity, nor did it make Stafford loans; and that no federal program made or funded the Excel Grad loan. The Navient prospectus demonstrated that the Excel Grad loan

35

was a wholly private loan from a wholly private program that was completely separate and distinct from any federal loan or federal program. (A-112-134). The Navient prospectus is substantive evidence that should be considered on summary judgment. *See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 124 n.12 (2d Cir. 2010) (holding that district court abused its discretion by failing to admit Consent Order and finding that Second Circuit was "empowered to take judicial notice" of the Consent Order "as it is a public record"); *see also Kravitz v. Tavlarios*, No. 20-2579, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021) ("District Courts may take judicial notice of facts 'not subject to reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b)(2). These sources include SEC filings.") (citation omitted).[5]

---

[5] Courts resolving summary judgment motions regularly accept SEC filings as evidence. *Desclafani v. Pave-Mark Corp.*, No. 07-cv-4639, 2008 WL 3914881, at *5 n.7 (S.D.N.Y. Aug. 22, 2008) ("Because courts may take judicial notice of the contents of filings with the [SEC], and any facts subject to judicial notice may be properly considered in a motion for summary judgment, I take judicial notice of the contents of [a filed] Proxy Statement and consider it for the purposes of this motion." (internal quotation marks and citations omitted)); *Donoghue v. Astro Aerospace Ltd.*, No. 19-CV-7991, 2021 WL 1964294, at *1 (S.D.N.Y. May 17, 2021); *Microbot Med., Inc. v. Alliance Inv. Mgmt. Ltd.*, No. 19-cv-3782, 2020 WL 5755061, at *6 (S.D.N.Y. Aug. 18, 2020); *Schuman v. Aetna Life Ins. Co.*, No. 3:15-CV-1006, 2017 WL 1053853, at *11 (D. Conn. Mar. 20, 2017); *Pascal v. JPMorgan Chase Bank, Nat. Ass'n*, No. 09-CV-10082, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013); *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, No. 06 Civ. 7784, 2008 WL 904728, at *8 n.8 (S.D.N.Y. Apr. 3, 2008); *Charlot v. Ecolab, Inc.*, 12-cv-04543, 2017 WL 11526717, at * 14 n.10 (E.D.N.Y.

The district court clearly erred in not viewing this evidence in the light most favorable to Mr. Mader. The district court clearly erred in accepting as true the Zemetro declaration without weighing the contrary evidence showing the Grad Excel program was an entirely private loan program. Worse, the district court refused to even recognize that Mr. Mader submitted any evidence at all. The district court repeatedly ruled that the Zemetro declaration was "undisputed," that Mr. Mader failed to submit any evidence, and that the only evidence that Mr. Mader submitted to controvert the Zemetro declaration was Mr. Mader's own declaration, which the court rejected as having "no probative value." (A-270-273, 276-277, 280). That makes no sense because Mr. Mader submitted the Navient prospectus in a declaration in opposition to motion for summary judgment, cited it in Mr. Mader's Counter 56.1 Statement of Material Facts In Dispute, expressly referred to it and made it a critical part of his opposition to the motion for summary judgment and his motion for reconsideration. (A-55, 82, 104, 112-136).

On review, this Court gets a chance to conduct the proper summary judgment analysis and to evaluate the evidence in the light most favorable to Mr. Mader to determine if there is any reasonable juror who could find that the loan was not made under a program that was funded in part by the federal government.

---

March 29, 2017) ("The court may take judicial notice of SEC filings, as they are a "source[ ] whose accuracy cannot reasonably be questioned") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))

## II.   THE DISTRICT COURT ERRED IN RULING THAT NO PROGRAM NEEDS TO BE IDENTIFIED TO DETERMINE WHETHER A LOAN FALLS WITHIN 11 U.S.C. § 523(a)(8)(A)(i).

The district court also misinterpreted the statutory term "program" beyond any reasonable interpretation of the term.  For a loan to be exempt from discharge, § 523(a)(8)(A)(i) requires that it be "made under a **program** that is funded in whole or in part by a governmental unit."

Mr. Mader contended and submitted evidence that the Excel Grad loan was made under the Excel Grad program and that the Excel Grad program was different from the FFELP or Stafford program.   Experian contended that it satisfied the statutory requirement merely by having Mr. Zemetro state that the "loan was made under a program that was funded, in part by  . . . governmental units" because "in addition to making private loans, that program also make Stafford loans . . ." without ever identifying what program it is they are talking about.

The district court faulted Mr. Mader for seeking some specification of which program Experian and Navient contended was funded by the federal government. Without any identification of the program that is at issue, how could anyone prove or disprove that the program that made was funded at all by the government? Before a court could determine that a government funded a program, it must identify what program is at issue.

38

According to the district court, however, a program is whatever Navient and Experian says it is. Experian submitted no Navient contracts, no invoices, no financial records, no agreements, no descriptions, no marketing material, no emails and no correspondence identifying the program at issue. Clearly it is not the law that Experian can prove beyond doubt that the controverted loan was made under a federally funded program without so much as ever identifying the program.

The term "program" is not defined in § 523(a)(8)(A)(i). The plain meaning of the word program is "a plan or system under which action may be taken toward a goal." "Program," *Merriam-Webster Dictionary* (2021) (http://merriam-webster.com/dictionary/program). In the context of the statute, a program must mean a specific type and group of loans that can be funded by another party, *i.e.*, the government.

Indeed, following very closely after § 523, in the same statutory scheme, is § 525 of the Bankruptcy Code which prohibits discrimination in "student loan programs." 11 U.S.C. § 525(c)(1). It defines "student loan program" to mean "any program operated under title IV of the Higher Education Act of 1965 or a similar program operated under State or local law." *Id.* § 525(c)(2); *Homaidan*, 3 F. 4th at 602 ("When interpreting a disputed statutory term, [the court] must not look merely to [the] particular clause, but consider [it] in connection with it the whole statute.") (citations omitted).

39

Loans that are funded by the government are all governed by the Higher Education Act, 20 U.S.C. §§ 1001 *et seq*. The Higher Education Act uses the term "program" extensively to describe a specific type and group of loans with similar defined attributes. For example, the Higher Education Act statutorily defines the FFLP and Stafford Programs as types of "programs". 20 U.S.C. § 1071 *et seq*. and 34 CFR § 682 *et seq*. Notably, loans made under the FFELP Program can only be provided to attend schools that are eligible institutions under Title IV of the Higher Education Act. 20 U.S.C. §§ 1091, 1094. In contrast, by statute, "private education loans" are loans that are not made, insured or guaranteed under Title IV of the Higher Education Act. *See* 15 U.S.C. § 1650(a)(8) and 12 C.F.R. § 226.465.

As noted, the Navient prospectus and the application and promissory note use the term "program" in the exact same way, by referring to a specific type and group of loans that have similar terms and attributes. (A-112-138).

In the context of student loans, courts have repeatedly required that the creditor identify what program is at issue in order to determine whether an exemption from discharge has been proven. For example in *In re Wiley*, 579 B.R. at 1, 6-7, one ground on which the court denied summary judgment was that the bank-creditor failed to identify the loan program at issue: "Wells Fargo's assertions do not identify the program under which the Loans were extended, address the relationship between Wachovia and TERI, or otherwise show that TERI funded the

program under which the Loans were made" and then ruled that "[t]hese gaps in Wells Fargo's assertions doom its summary judgment motion as it relates to section 523(a)(8)(A)(i)." *In re Wiley*, 579 B.R. at 1, 6-7 (emphasis added).

More recently in *Palmer v. Galaxy International Purchasing, LLC* (*In re Palmer*), No. 15-05073, 2021 WL 1259258, at *2 (N.D. Ohio Mar. 31, 2021), after a bench trial, the court granted judgment to the debtor because the creditor failed to provide any other evidence that a nonprofit was involved in funding or guaranteeing the loan and that "[n]o evidence of the loan program was introduced." *Id.* at *10.

Some level of specificity as to the program at issue has also been required to escape liability in other statutory schemes that use the term "program." For example, in *Grove City College v. Bell*, 465 U.S. 555 (1984) the Supreme Court held that determining whether a person "has been subject to discrimination in any program or activity receiving Federal financial assistance" under Title IX, requires specifically "identify[ing]" the program and that "unless such a program can be and is identified, there is no basis for ordering the College to execute an Assurance of Compliance." *Id.* at 570 n.20 and 570-72; *see also U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 611 (1986) (rejecting as "unavailing" the "Court of Appeals' attempt to fuse airports and airlines into a single program or activity" under the Rehabilitation Act merely because the two activities were "inextricably intertwined"; holding that "[i]t is by reference to the grant statute,

41

and not to hypothetical collective concepts like commercial aviation or highway transportation, that the relevant program or activity is determined."); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 636 (1984) (ruling that under the Rehabilitation Act the term "program" only applies to "the specific program that receives federal funds" and declining to consider whether federal funding provided to a program because "the District Court [did not] develop the record or make factual findings that would be required to define the relevant "program.").

In *U.S. v. University Hospital of New York*, 729 F.2d 144 (2d Cir. 1984), this Court ruled that that the issue of what "program" the Rehabilitation Act applied to was "unsettled" such that "summary judgment could not properly granted to either side." *Id.* at 151. This Court rejected the defendant's non-specific declaration that the hospital receiving federal funds was a "program under the statute," finding that "this affidavit alone hardly affords a sufficient basis upon which to determine as a matter of law how the program-specificity requirement of section 504 should be applied here." *Id.* "Far from being undisputed, many of the material facts bearing on the issues have simply not been developed in the record. For example, the record does not reveal the total amount of federal Medicare and Medicaid funds the hospital has received, directly or indirectly, or more importantly, how those funds are allocated among the various 'programs' or 'activities' that the hospital may conduct. Indeed, the record is devoid of evidence even as to how the hospital is

42

organized, either internally or as part of a network of state-affiliated institutions." *Id.*

Because the declaration submitted in *University Hospital* did not adequately identify the program at issue, this Court ruled that "the issue of program-specificity cannot be properly analyzed in the abstract, but instead requires a concrete set of facts." *Id*. The same failure to identify the program at issue here dooms Experian's motion.

In addition, the district court here credited Zemetro's claim that the Excel Grad program "also" made Stafford loans and that Excel Grad loans were to be provided after a borrower "maximized" his or her Stafford loans. First, that is not true, since Mr. Mader did not—and could not—receive a Stafford loan. Second, merely because someone obtains a private loan after a federal loan does not qualify those loans are coming from the same program. Indeed, lenders are statutorily required to tell borrowers to first borrow from federal sources. 20 U.S.C. § 1019A. Navient's marketing ploy to offer private loans after federal loans does not create a program under the statute. If it did then virtually every private loan would be considered part of a federal program. If there truly were such a program, Navient would have some objective evidence of it.

Finally, how Navient itself defines the word "program" is ultimately irrelevant. The clear Congressional purpose of § 523(a)(8)(A)(i) is to protect the

corpus of funds made available by the government (and nonprofits) to fund higher education for needy students. To come within the terms of (A)(i), the borrower's default must have some impact on the federal fisc. *See* P.L. 95-598, Nov. 6, 1978 and P.L. 96-56, Aug. 14, 1979 (enactment and amendment of § 523(a)(8)(A)(i) require that the loan be owed directly to the government or a nonprofit or to a government or nonprofit guarantor). Thus loans, even if partially funded by federal funds, are covered by the statute.

Totally private education loans, on the other hand, only received the protection under the statute much later, in 2005, and only to the extent that such loans meet the very strict conditions of § 523(a)(8)(B), that is, that they are "qualified education loans" as defined by Internal Revenue Code § 221(d)(1). *Homaidan*, 3 F.4th at 601. That section, in turn, limits qualified education loans to those that are made to students attending schools certified under Title IV of the Higher Education Act and are within the "cost of attendance" as defined by 20 U.S.C. § 1087ll of that Act.

It is undisputed that the Excel Grad loans and the Excel Grad Program do not include *any* federal funds. They are funded by private, commercial banks and other entities. If lenders such as Navient can, nonetheless, get the protection of subsection (A)(i) by merely purporting to put the private loans in the same "program" as federal loans, they can eviscerate the terms of subsection (B). As

44

this Court emphasized in *Homaidan*, a statute should not be read in such a way as to render one of its provisions a dead letter. *Homaidan*, 3 F.4th at 602 ("Navient's construction also offends the canon against surplusage, which advises courts to interpret a statute to effectuate all its provisions, 'so that no part will be inoperative or superfluous,'" and "[t]he canon is at its 'strongest when an interpretation would render superfluous another part of the same statutory scheme.'") (citations omitted). Indeed, it is undisputed that Mr. Mader's Excel Grad loans do not meet the conditions of subsection (B) because he did not attend a Title IV school. Thus, in this very case, Navient is attempting an end run around the express conditions of subsection (B) by continuing to demand payment on Mr. Mader's discharged private loans, and Experian is aiding in that effort by continuing to report those loans as past due.

This Court's ruling in *O'Brien v. First Marblehead Education Resources, Inc.* (*In re O'Brien*), 419 F.3d 104, 105 (2d Cir. 2005) is irrelevant to the issues raised here. The issue in *O'Brien* was whether the term "funded" in the statute was broad enough to encompass guarantying a loan. There, the plaintiff-appellant-debtor received a private loan that was guaranteed by a nonprofit corporation. The loan program was specifically identified and it was "undisputed that O'Brien's loan was made through a program that in turn was funded by a nonprofit institution." *In re O'Brien*, 419 F.3d at 104, 106 (finding that it was undisputed

45

that student loans were made under the Law Access Program and guaranteed by First Marblehead Education Resources, Inc.).   Further, the non-profit's "uncontested description of its relationship with the Law Access Loan Program strongly suggests that [it] funded the program." *Id.* at 106.   The dispute was whether the nonprofit had to guaranty the loan itself as opposed to guarantying the program.   In *O'Brien*, the very fact that the loan program at issue was identified and its relationship to a non-profit was described are the facts that are not present here.

Similarly, none of the cases cited by the district court is helpful here.   In each of *In re Holguin, In re Page, In re Jean Baptiste and In re Golden*, the specific loan program and government entity or non-profit that funded the specified loan program was identified.   *Holguin v. Nat'l Coll. Student Loan Trust 2006-2* (*In re Holguin*), 609 B.R. 878, 885-86 (Bankr. D.N.M. 2019) (identifying GMAC Bank Undergraduate Loan Program guaranteed by TERI, a purported nonprofit institution); *Page v. Nat'l Coll. Student Loan Trust 2006-1* (*In re Page*), 592 B.R. 334, 337 (8th Cir. BAP 2018) (identifying Bank One Education One Program guaranteed by TERI, Inc. a purported nonprofit organization); *Jean-Baptiste v. Educ. Credit Mgmt. Corp.* (*In re Jean Baptiste*), 584 B.R. 574, 585 (Bankr. E.D.N.Y. 2018) (identifying National City Bank loans funded by Access Group, a nonprofit organization and 501(c)(3)); *In re Golden*, 596 B.R. at 239, 266

46

(identifying Bank One Education Program guaranteed by TERI Inc., a purported Massachusetts nonprofit and 501(c)(3)).

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE REQUEST FOR RULE 60(B) RELIEF.

During the pendency of this appeal, Mr. Mader's counsel deposed Mr. Zemetro in the *DiDonato* action. Mr. Zemetro's testimony demonstrated that his declaration in this case was inaccurate and that he fundamentally misrepresented that he had a factual basis to attest that the Excel Grad program was funded in part by the federal government. His testimony made clear that he had no knowledge of the Excel Grad program and that he was merely provided the promissory note and told to repeat in his declaration what the promissory note said.

Because the district court already stated that it was not relying on the promissory note as evidence and because Experian had submitted no other documentary evidence, Mr. Zemetro's admission that he was not relying on anything other than the promissory note and that he had no personal knowledge of any other facts about the Excel Grad program demonstrates that his declaration is without any legitimate basis.

That should have been enough to grant Rule 60(b) relief. But the district court adhered to its prior ruling and denied Rule 60(b) relief. (A-278).

### A.    Mr. Mader Is Entitled To Relief Under Rule 60(b)(2)

Relief from judgment should be granted under Rule 60(b)(2) where the newly discovered evidence existed at the time of the final judgment, the movant was justifiably ignorant of the evidence despite due diligence, the evidence was important enough that it probably would have changed the outcome, and the evidence was not merely cumulative or impeaching." *Zaratzian v. Abadir*, No. 10 CV 9049, 2012 WL 9512531, at \*3 (S.D.N.Y. May 30, 2012); *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010).

The district court erroneously found that that the new deposition testimony merely impeached Mr. Zemetro's prior declaration because it went "to the basis and reliability of his written testimony rather than its substance." (A-280). The new evidence of Mr. Zemetro's lack of knowledge is not merely impeaching; it goes beyond that to fully disprove the facts that Experian put before the Court on summary judgment.

When the new evidence rebuts the substantive evidence introduced in a prior proceeding, it is more than merely impeaching. In *Fields v. City of Chicago*, 981 F.3d 534, 555 (7th Cir. 2020), where a party withheld facts of a witness's cooperation agreement, the court held that the true "evidence of the pre-existing arrangement . . . could be useful for impeachment purposes, but here the evidence is not merely impeaching because it demonstrated misrepresentation and fraud in

the case."  Notably, the "newly discovered evidence does not merely cast doubt on the credibility of a witness, but rebuts the substantive evidence introduced into the record by defendants, and exposes the misrepresentations as to [the witness], that were part of discovery, the trial and the closing statement.  Such evidence implicates the integrity of the fact-finding process."  *Id.; see also Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 516 (8th Cir. 1984) (holding that newly discovered evidence that "sheds an entirely different light" or "discredits" prior evidence "cannot be construed as 'merely cumulative' or "categorized solely as 'impeachment' evidence"); *Nehara v. California Dep't of Corr. and Rehab.*, No. 1:10-CV-00491, 2013 WL 3968173, at *6 (E.D. Cal. July 31, 2013), *aff'd sub nom. Nehara v. California Dep't of Corr. & Rehab.*, 650 F. App'x 495 (9th Cir. 2016) (holding that seriously misleading testimony and omitted relevant facts had "the 'damning' quality Rule 60(b)(2) envisions" and was not "merely impeaching" and "mild").

The district court was also wrong to find that the Mr. Mader did not exercise due diligence in obtaining the new evidence because he did not "invoke Rule 56(d) or seek leave of the Court to re-open discovery" after the summary judgment was filed.  (A-280).

A party need only exercise reasonable diligence in obtaining the new evidence; it need not engage in heroic efforts before invoking Rule 60(b)(2).

"Reasonable diligence requires that the movant acted with some promptness where the facts and circumstances would put a person of common knowledge and experience on notice that some evidence might exist." *S.E.C. v. Wojeski*, 752 F. Supp. 2d 220, 228 (N.D.N.Y. 2010), *aff'd sub nom. Smith v. S.E.C.*, 432 F. App'x 10 (2d Cir. 2011). Rule 60(b)(2) requires a party to have "exercised reasonable due diligence" and "not that it pursued every conceivable lead." *Id.*; *see also Ins. Co. of N. Am.*, 609 F.3d at 131.

Here, Mr. Mader could not have known that Mr. Zemetro was going to submit a false declaration on summary judgment after the close of discovery and thus exercised reasonable diligence when his counsel discovered that falsity through testimony in another action.

Mr. Mader had asked Experian to submit Mr. Zemetro to a deposition after the end if discovery and Experian adamantly refused to do so arguing it was against Second Circuit precedent and that it was too late as discovery was closed.

The district court also erred in finding that the new evidence would not have changed the outcome of the litigation because there was no other evidence in the record to support Mr. Mader's position. Again, without even acknowledging that Mr. Mader submitted the Navient SEC Prospectus and cited it throughout its papers, the district court found that "the only evidence in the record" was the promissory note and the Zemetro declaration and that "Plaintiff identified no

contrary evidence." (A-280). It is an abuse of discretion to repeatedly ignore Mr. Mader's evidentiary submissions and then to base rulings on the grounds that he submitted none.

### B. Mr. Mader Is Entitled To Relief Under Rule 60(b)(3).

The district court abused its discretion in finding that Mr. Zemetro's deposition testimony that "he learned about the Navient Loan based on his 'overall knowledge' of Navient's loan servicing system and review of the promissory note" was not inconsistent with or show a misrepresentation in his prior declaration. (A-281).

The district court misapprehended Mr. Mader's argument. The declaration was not untrue based on whether Mr. Zemetro had overall experience at Navient. It was untrue because he had no factual basis at all to assert that the Excel Grad loan was funded in part by the federal government. Mr. Zemetro was not presented as corporate witness. He was presented as a percipient fact witness with personal knowledge of the Excel Grad program and from where it gets its funding. He knew none of those facts and never experienced them in any way in his job. He never saw them, worked on them, heard about them, nor talked about them with anyone. He admits to reading the promissory note, but had no other basis for attesting to any of the "facts" contained in his declaration.

Mr. Zemetro also attested that obtaining an Excel Grad loan was conditioned on first maximizing one's federal loans. (A-41, ¶ 4). But he testified that was not true. There was nothing in the record to support his statement. The school was ineligible to receive federal funds and Mr. Mader could not and did not receive a federal loan. These were fundamental misrepresentations warranting relief under Rule 60(b).

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff-Appellant Mr. Mader respectfully requests that district court's judgment be vacated.

Dated:  November 19, 2021

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ Adam R. Shaw*
Adam R. Shaw
George F. Carpinello
Jenna Smith
Boies Schiller Flexner LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600
Email: ashaw@bsfllp.com
gcarpinello@bsfllp.com
jsmith@bsfllp.com

*Counsel for Plaintiff-Appellant*

52

## **CERTIFICATE OF SERVICE**

I, Adam R. Shaw, hereby certify that on November 19, 2021, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF System. I further certify that the above document was served on all parties by the Court's CM/ECF system.

*/s/ Adam R. Shaw*
Adam R. Shaw

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

    • It contains 12,078 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32 because:

    • It has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Adam R. Shaw*