# 20-3073; 21-2171

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Michael Mader,

*Plaintiff-Appellant,*

v.

Experian Information Solutions, Inc.,

*Defendant-Appellee.*

On Appeal From The United States District Court
For The Southern District of New York

**BRIEF FOR DEFENDANT-APPELLEE**

John A. Vogt
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612
Office +1.949.553.7516

Meir Feder
Kerianne N. Tobitsch
Jack Millman
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-7870

*Attorneys for Defendant-Appellee*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that Defendant-Appellee Experian Information Solutions, Inc. is a wholly owned subsidiary of Experian plc. Experian plc is registered as a public company in Jersey, Channel Islands, and is publicly traded on the London Stock Exchange.

Dated: February 18, 2022

/s/ Meir Feder
Meir Feder

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF ISSUES ......................................................................3

STATEMENT OF THE CASE .................................................................4

I.    Pre-Lawsuit Conduct ..................................................................4

II.   Current Lawsuit ........................................................................6

SUMMARY OF THE ARGUMENT .......................................................9

STANDARD OF REVIEW ....................................................................11

ARGUMENT .........................................................................................11

I.    Summary Judgment Was Properly Granted Due To Mader's Inability To Satisfy The "Inaccuracy" Element Of His Claim. ...........11

    A.   The District Court Correctly Held That Mader's Student Loan Debt Was Not Discharged. ...............................................12

    B.   Mader's Claim That Experian Should Have Made A Legal Judgment That His Debt Was Discharged Fails To Satisfy The § 1681e(b) Requirement Of A Factual Inaccuracy. ...............19

II.   Experian Was Also Entitled To Summary Judgment Because No Reasonable Jury Could Find That Experian's Procedures Were Unreasonable. ..................................................................................22

III.  THE DISTRICT COURT PROPERLY REJECTED MADER'S RULE 60(B) MOTION .........................................................................27

    A.   Denying Mader's Rule 60(b)(2) Motion Was Not An Abuse Of Discretion. .........................................................................27

    B.   Denying Mader's Rule 60(b)(3) Motion Was Not An Abuse Of Discretion. .........................................................................30

CONCLUSION .....................................................................................32

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .....................33

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*In re Drumm*, 329 B.R. 23 (Bankr. W.D. Pa. 2005) .......................................... 17, 18

*Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478 (11th Cir. 2020)......20

*Boule v. Hutton*, 170 F.Supp.2d 441 (S.D.N.Y. 2001) ............................................28

*Brill v. TransUnion LLC*, 838 F.3d 919 (7th Cir. 2016)..........................................20

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010)........ 10, 20, 21

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017)..12

*Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010).................. 10, 21

*Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745 (7th Cir. 2015) .....................26

*Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174 (2d Cir. 2015) .................................11

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239 (2d
    Cir. 2020).........................................................................................................11

*Consol. Rail Corp. v. Darrone*, 465 U.S. 624 (1984)..............................................18

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) ...............................27

*Crump v. Carrington Mortg. Svcs.*, No. 18-C-2302, 2019 WL 118490 (N.D. Ill.
    Jan. 7, 2019).....................................................................................................24

*DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008)..................... 7, 20, 22

*DiDonato v. GS Services Limited Partnership, et al.*, Case No. 1:20-cv-02154-LGS
    (S.D.N.Y.)...........................................................................................................8

*Fleming v. New York University*, 865 F.2d 478 (2d Cir. 1989)...............................30

*Frederick v. Capital One Bank, N.A.*, No. 14-CV-5460, 2015 WL 5521769
    (S.D.N.Y. Sep. 17, 2015)..................................................................................23

*Frydman*, No. 14-CV-9013, 2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016).. 23, 24

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015)..............................11

*Grove City Coll. v. Bell*, 465 U.S. 555 (1984)..........................................................18

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994).....................................23

*Hupfauer v. Citibank, N.A.*, No. 16-C-475, 2016 WL 4506798 (N.D. Ill. Aug. 19, 2016) ........................................................................................................ 21, 24

*In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144 (2d Cir. 2015)........12

*In re Hull*, No. 18-32076, 2021 WL 1602880 (Bankr. W.D. Ky. Apr. 23, 2021)...22

*In re Moon*, 610 B.R. 616 (Bankr. E.D. Wis. Dec. 18, 2019) .................................26

*In re O'Brien*, 419 F.3d 104 (2d Cir. 2005)......................................... 13, 15, 16, 25

*In re Pilcher*, 149 B.R. 595 (B.A.P. 9th Cir. 1993)......................................... 15, 16

*LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x 748 (2d Cir. 2017).............11

*Lorusso v. Borer*, 260 F. App'x 355 (2d Cir. 2008) .................................................28

*Mirlis v. Greer*, 952 F.3d 36 (2d Cir. 2020) .............................................................30

*Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013) ..........................................................................................24

*Okocha v. Trans Union LLC*, 488 F. App'x 535 (2d Cir. 2012) .............................20

*Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025 (S.D.N.Y. 1996)...... 23, 27

*Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074 (D. Or. 2007) .........................23

*Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004)........................... 23, 24

*Scott v. Real Estate Fin. Grp.*, 183 F.3d 97 (2d Cir. 1999) ......................................6

*Sessa v. Linear Motors, LLC*, No. 19-CV-9914 (KMK), 2021 WL 6052134 (S.D.N.Y. Dec. 20, 2021) ........................................................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88 (2d Cir. 2021)...........................11

*State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004) ..................................................................................................31

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986) ...........18

*United States ex rel. Lockey v. City of Dallas*, 576 F. App'x 431 (5th Cir. 2014)..19

*United States v. IBT*, 179 F.R.D. 444 (S.D.N.Y. 1998)...........................................28

*United States v. Int'l Broth. Of Teamsters*, 247 F.3d 370 (2d Cir. 2001)... 27, 28, 29

*United States v. Univ. Hosp.*, 729 F.2d 144 (2d Cir. 1984)....................................19

*Wenning v. On-Site Manager, Inc.*, No. 14-Civ-9693, 2016 WL 3538379 (S.D.N.Y. June 22, 2016) ....................................................................................23

*Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232 (10th Cir. 2015) ........ 20, 23, 27

## Statutes

11 U.S.C. § 523(a)(8)...........................................................................................7, 16

11 U.S.C. § 523(a)(8)(A)(i) .................................................................... 2, 9, 12, 13

15 U.S.C. § 1681e(b) ...................................................................................... passim

15 U.S.C. § 1681i...................................................................................................21

**INTRODUCTION**

Appellee Michael Mader's claim in this case is that Experian should have—on its own initiative—reported his student loan as wiped out by his bankruptcy, even as he and the lender treated it as an ongoing obligation that was never discharged. Mader obtained the student loan from Sallie Mae in 2008, executing a promissory note in which he acknowledged that the loan was a "qualified education loan" that was "not dischargeable in bankruptcy." After emerging from a Chapter 7 bankruptcy in 2013, Mader entered into a loan modification agreement with Navient (the successor to Sallie Mae's interest in the loan) to reduce his monthly payments, and made regular payments over a three year period. Navient reported the loan modification and payments to Experian, as well as Mader's delinquency when he stopped making payments on the loan in 2017; Mader, for his part, never informed Experian that he disputed the loan was an ongoing obligation. Experian, in turn, reported the loan information on credit reports.

Mader's claim fundamentally misunderstands both the non-dischargeability provisions of the Bankruptcy Code and the role of credit reporting agencies, and as a result he fails to satisfy the core element of a claim under 15 U.S.C. § 1681e(b): that his Experian credit report was inaccurate. This is true for two independent reasons.

First, the sole evidence on summary judgment was that Experian's reporting was accurate. Student loans are not dischargeable in bankruptcy if "made under any program funded in whole or in part by a governmental unit or nonprofit institution," 11 U.S.C. § 523(a)(8)(A)(i), and the uniform evidence—including the declaration of a Navient witness who Mader neither rebutted nor sought leave to depose—was that Mader's loan was made pursuant to such a program.

Second, even if it were not clear that Mader's loan was non-dischargeable under § 523(a)(8)(A)(i), the inaccuracy element under § 1681e(b) requires a *factual* inaccuracy, not a mere legal dispute as to the validity of a debt—as every Circuit to address the issue has held. The FCRA does not expect, let alone require, credit reporting agencies to adjudicate consumer-creditor disputes over whether a debt is due and owing—something that, in this case, would have required analysis of unclear bankruptcy-law issues and unavailable-to-Experian facts about the origination of Mader's loan. Still less does the FCRA require this when the consumer himself treated the debt as valid, and gave Experian no hint he disputed validity until he filed this lawsuit.

Further, even if Mader had shown an inaccuracy, Experian was also entitled to summary judgment due to his failure to raise a genuine issue of material fact with respect to the § 1681e(b) requirement that he show Experian failed to follow "reasonable procedures" for ensuring accuracy. Experian was permitted to report

information from Navient, a reliable source, in the absence of any notice from Mader or any other source that the information was questionable. Indeed, had Experian done what Mader now belatedly says was required, it could have been sued for hurting Mader's credit score by reporting the loan as discharged instead of reporting Mader's four years of payments on the loan.

Finally, Mader's attempt to reopen the judgment pursuant to Rule 60(b) was properly rejected.

The District Court's judgment should be affirmed.

## STATEMENT OF ISSUES

1.    Did Mader satisfy the "inaccuracy" element of a claim under 15 U.S.C. § 1681e(b), when Experian provided unrebutted evidence that Mader's student loan was, as it reported, not dischargeable in bankruptcy?

2.    Did Mader claim a cognizable inaccuracy under 15 U.S.C. § 1681e(b) by contending that Experian should have decided, *sua sponte*, that the student loan as to which he executed a post-bankruptcy modification and was making ongoing payments had nonetheless been discharged in bankruptcy?

3.    Was Experian entitled to summary judgment on the alternative ground that Mader failed to show that Experian's reliance on Navient's reporting, in the absence of any notice that the validity of the loan was contested, was an unreasonable procedure under 15 U.S.C. § 1681e(b)?

4.     Did the district court abuse its discretion by finding no exceptional circumstances existed that justified granting plaintiff's motion for relief from the judgment?

## STATEMENT OF THE CASE

### I.     Pre-Lawsuit Conduct

In 2008, Mader obtained an $18,000 Excel Grad student loan from Sallie Mae subsidiary Nellie Mae to attend graduate school at the Reformed Theological Seminary in Florida.  A-40, 54, 56, 142.  The application documents described Excel Grad Loans as "flexible, private education loans . . . that complement the Federal Stafford Loan program.  They are designed for graduate and professional students who have borrowed their maximum Federal Stafford Loan amounts but still have remaining college expenses."  A-142.  Because the Reformed Theological Seminary did not participate in federal loan programs in 2008, the maximum Mader could borrow in Stafford Loans was $0.  A-135.  Mader's loan was later assigned to Navient Corporation, which succeeded to Sallie Mae's educational loan business in a 2014 spin-off.[1]  A-40-41, 54.

---

[1] To avoid confusion, Sallie Mae actions will be referred to as "Navient" actions in this brief.  The loan will be referred to as the "Navient Loan."

Mader executed a promissory note to obtain the Navient Loan. A-54. The note stated that the loan was made under a program that also makes Stafford Loans and thus was not automatically discharged in bankruptcy, stating (A-147):

> I understand that this loan is an educational loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units and, therefore, is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986, 26 U.S.C. § 221(d)(1), and is not dischargeable in bankruptcy, except pursuant to 11 U.S.C. § 523(a)(8).

Mader later testified at his deposition that at the time he signed the promissory note, he understood the "not dischargeable" language to mean that "when I filed for bankruptcy, this loan would not be dischargeable." S-50–51.

On December 28, 2012, Mader filed for bankruptcy under Chapter 7 of the Bankruptcy Code. A-57. Four months later, the bankruptcy court issued a Discharge Order providing that Mader "is released from all *dischargeable* debts." A-57-58 (emphasis added). That Discharge Order also states that certain categories of debts are not discharged in bankruptcy, including debts for "most student loans." A-58.

Shortly after Mader's bankruptcy, Mader and Navient entered into a loan modification agreement, under which Mader agreed to continue to make payments on the loan at a reduced monthly rate. A-58-59. This agreement was communicated to Experian and reported in Mader's file. Mader made one payment on the Navient Loan pursuant to that agreement in June 2013 and then made additional payments

from August 2014 to April 2017, and each of those payments was communicated to Experian and is reflected in Mader's file.  A-50-51, 59.  After April 2017, Mader stopped making payments.  A-136.  In January 2019, Mader obtained a copy of his consumer credit report from Experian.  A-137.  It reported the payments (up through April 2017), the fact that the account had been charged off and a portion of the original balance was past due, and that Mader had agreed to make payments "under a partial payment agreement."  A-165.  Navient continues to maintain that the loan has not been discharged.  A-42.

## II.    Current Lawsuit

In 2019, after having not notified Experian for six years post-bankruptcy that he believed his student loan had been discharged, Mader sued Experian.  The operative complaint alleges that Experian negligently and willfully violated § 1681e(b) of the Fair Credit Reporting Act ("FCRA") by failing to use reasonable procedures to ensure maximum possible accuracy of his credit report.  A-32-36.  The complaint asserts that Experian erroneously reported the Navient Loan as having a past due balance and also erred by failing to report the loan as having been discharged in bankruptcy.[2]

---

[2] The complaint also alleged claims under New York's credit reporting law. The parties agree that because New York's credit reporting law has nearly identical language as the FCRA, the Second Circuit has advised that "the[se] two statutes must be construed in the same way."  *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999).

On motion for summary judgment, Experian argued, among other things, that its reporting was accurate, in that Mader's student loan was non-dischargeable. Experian pointed to the promissory note and application, Mader's own understanding of the note, and a declaration by a senior Navient employee (John Zemetro) attesting that the Navient Loan "was also made under a program that was funded, in part, by non-profit organizations" given the "program also makes Stafford loans." A-272. Experian also argued that a claim under § 1681e(b) requires a *factual* inaccuracy, whereas the legal question of discharge was an "issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA." S-24 (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)).

The district court granted Experian's motion for summary judgment on the ground that "Plaintiff's credit report was not inaccurate" because the Navient Loan was never discharged. The court first explained that debts that fall under 11 U.S.C. § 523(a)(8) are not discharged in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship." A-270. And that subsection 523(a)(8)(A)(i) encompasses debts for "an educational benefit overpayment or loan . . . made under any program funded in whole or in part by a government unit or nonprofit institution." *Id.* The Court then found it "undisputed that the Navient Loan was made under a program that also makes Stafford loans, which are guaranteed or funded by nonprofits (including governmental units)," which brought

it within Subsection (A)(i).  A-271.  This meant the loan could be discharged only if Mader showed "undue hardship," which is a showing Mader never even attempted to make in bankruptcy.  *Id*.

After the court denied his motion for reconsideration, *Mader v. Experian Information Solutions*, 2020 WL 5416337 (S.D.N.Y. Sep. 3, 2020), Mader filed the appeal in No. 20-3073.

While that appeal was pending, counsel for Mader pursued third-party discovery from Navient in a different, unrelated action.  *DiDonato v. GS Services Limited Partnership, et al.*, Case No. 1:20-cv-02154-LGS (S.D.N.Y.).  The plaintiff in that case took the deposition of Mr. Zemetro and another Navient witness.  A-195, 222.

After filing his initial appeal, Mader brought a motion under Fed. R. Civ. P. 62.1 for an indicative ruling that the court would grant him relief pursuant to Rules 60(b)(2) and 60(b)(3); the district court denied this motion.  A-278.  Among other things, Mader asserted that Mr. Zemetro's deposition in *DiDonato* contradicted his declaration in the instant case, in that the declaration states he "gained personal knowledge of the facts and circumstances [of this case] from my experience at [Navient], as well as my personal examination of [Navient's] records" but in his deposition he admitted his only knowledge of this case came from the promissory note.  Dkt. 104 at 5–9.  The court rejected the Rule 60(b)(2) argument for three

independent reasons: (1) the deposition of Mr. Zemetro was at most impeaching because it did not go to the substance of his testimony; (2) Mader failed to show he was justifiably ignorant of the evidence despite due diligence, given that he "did not invoke Rule 56(d) or seek leave of the Court to re-open discovery as to Zemetro's Declaration even though he submitted supplemental information to the Court before a decision was rendered"; and (3) he also failed to show this "new" evidence would have changed the outcome of the case. A-280. The court found Rule 60(b)(3) relief was not warranted because Mader had not shown that Experian "engaged in fraud, misrepresentation, or misconduct." A-281-82.

Mader appealed the denial of his Rule 62.1 motion (21-2171). That appeal was consolidated with his original appeal (20-3073).

## SUMMARY OF THE ARGUMENT

This district court properly granted summary judgment to Experian.

As the district court held, Mader failed to satisfy the core element of a claim under § 1681e(b): an inaccuracy on his credit report. The district court correctly found that the Navient Loan was made "under [a] program funded . . . in part by a government unit or nonprofit institution" and thus is non-dischargeable except on a showing of undue hardship, which was not made. A-271 (quoting 11 U.S.C. § 523(a)(8)(A)(i). At summary judgment, the evidence was unrebutted that Mader's loan was part of a program that included government or nonprofit funding,

including a declaration by Navient Senior Director John Zemetro.  Mader offered no meaningful response, and his belated attack on Mr. Zemetro's basis for his declaration does not change the analysis.

In any event, as multiple Circuits have held, it is not the role of credit reporting agencies to adjudicate a consumer's legal defenses to the validity of a debt, and accordingly a consumer's "collateral attacks on the legal validity of [a] debt[]" cannot satisfy the inaccuracy element of an FCRA claim.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).  "[A] plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (emphasis in original). Mader's sole claim is that Experian failed to make a legal determination that his debt was discharged.  That complaint cannot support a claim under § 1681e(b).

Furthermore, Mader also failed to satisfy an additional element of a claim under § 1681e(b):  that Experian failed to follow "reasonable procedures."  No reasonable jury could have concluded that Experian failed to follow reasonable procedures by relying on Navient's reporting of a loan that Mader himself—by executing a modification and making ongoing payments—treated as valid, especially given that Mader never informed Experian he contested the loan's validity.

Finally, should this Court even reach the Rule 60(b) issue, it should hold the district court did not abuse its discretion for all the reasons given in the district court's opinion.

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment, *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 245 (2d Cir. 2020), and reviews for abuse of discretion a district court's denial of a motion for reconsideration, *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 177 (2d Cir. 2015). It reviews the denial of motions under Fed. R. Civ. P. 60(b) for abuse of discretion. *Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015). Abuse of discretion review also applies to denials of motions for indicative relief pursuant to Fed. R. Civ. P. 62.1. *LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x 748, 750 (2d Cir. 2017) (summary order).

## ARGUMENT

### I. Summary Judgment Was Properly Granted Due To Mader's Inability To Satisfy The "Inaccuracy" Element Of His Claim.

It is a fundamental element of a claim under 15 U.S.C. § 1681e(b) that the defendant credit reporting agency "engaged in . . . inaccurate reporting." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 92 (2d Cir. 2021). Mader failed to satisfy this element in two ways. First, there was no inaccuracy in reporting the debt. The unrebutted evidence on summary judgment was that the Navient Loan was made

"under [a] program funded . . . in part by a governmental unit or nonprofit institution" and thus was non-dischargeable. 11 U.S.C. § 523(a)(8)(A)(i). Second, "inaccuracy" under the FCRA requires a *factual* inaccuracy; the purported inaccuracy that Mader claims—Experian's failure to make the *legal* judgment that Mader's student loan debt was discharged in bankruptcy—cannot satisfy this element.[3]

### A. The District Court Correctly Held That Mader's Student Loan Debt Was Not Discharged.

#### 1. The unrebutted evidence on summary judgment was that Mader's loan was non-dischargeable.

The district court correctly held that Mader's student loan was not discharged in bankruptcy because it was non-dischargeable under the Bankruptcy Code—as Mader acknowledged in the promissory note he executed, and by making regular payments for three years following his bankruptcy.

Section 523 (a)(8) of the Bankruptcy Code makes several categories of student loans ineligible for discharge except upon a showing of undue hardship by the debtor. As relevant here, it exempts from discharge:

---

[3] Although the district court's summary judgment ruling did not reach this latter ground, this Court "may affirm [a district court's decision] on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) (quoting *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 157-58 (2d Cir. 2015)).

an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or *made under any program funded in whole or in part by a governmental unit or nonprofit institution*[.]

11 U.S.C. § 523(a)(8)(A)(i) (emphasis added).[4]

As this Court explained in *In re O'Brien*, 419 F.3d 104 (2d Cir. 2005), the plain language of this provision covers a student loan if it was "made under a *program* that was funded in whole or in part by a nonprofit institution," even if the particular loan at issue was not funded by a governmental or nonprofit institution. *Id.* at 107 (emphasis added).

Applying *O'Brien*, the district court correctly found that Mader's loan was within the scope of § 523(a)(8)(A)(i), because all of the competent evidence was that the loan was part of a program that included government or nonprofit funding. Navient Senior Director John Zemetro attested in a declaration that Mader's loan, an Excel Grad Loan, was "made under a program that was funded, in part, by non-profit organizations, including governmental units. Specifically, in addition to making private loans, that program also makes Stafford loans, which are guaranteed or funded by non-profits (including governmental units) under the Federal Family

---

[4] Experian argued below that the Navient Loan was also non-dischargeable under other provisions of § 523(a)(8), and it preserves those arguments in the event of remand.

Education Loan Program ['FFELP']." A-41.[5] Consistent with this, Mader's loan application described Excel Grad Loans as "complement[ing]" Stafford Loans by being "designed for graduate and professional students who have borrowed their maximum Federal Stafford Loan amounts but still have remaining college expenses." A-142. And the promissory note he executed, in bold and in a section entitled "Not Dischargable [sic]," stated that: "I understand that this loan is an educational loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units." A-147.[6]

Mader did not seek leave to depose Mr. Zemetro and provided no relevant contrary evidence. Instead, his statement of material facts in dispute responded to the assertion (Fact 10) that his "Navient Loan was made under a program that was funded in part by non-profit organizations, including governmental units," by arguing the loan "was a private loan that was not made by nor guaranteed by a

---

[5] Prior to the 2010 passage of the Student Aid and Fiscal Responsibility Act, as part of the FFELP, Stafford loans were made by entities like Sallie Mae but guaranteed or insured, and sometimes subsidized, by the federal government.

[6] Mader argues that it was improper to rely on the content of the promissory note, but numerous courts have considered such language when evaluating whether a student loan is dischargeable. *See, e.g.*, *In re Murphy*, 282 F.3d 868, 870 (5th Cir. 2002). In any event, the district court did not place principal reliance on the promissory note; rather, the promissory note corroborated Mr. Zemetro's declaration, and illustrated that Mader cannot have been surprised to discover that his loan was non-dischargeable.

government or non-profit." A-56. But as *O'Brien* makes clear, under the statute it is irrelevant if a particular *loan* is privately funded, so long as the program is "funded in part" by a qualifying entity. *See* 419 F.3d at 106. Mader's other responses to Fact 10 were similarly specific to his particular loan. *See* A-56 (arguing that the "Reformed Theological Seminary is not a Title-IV school under the Higher Education Act" and his program "was not an internship or a residency"). Likewise, as the district court correctly found, plaintiff's own declaration that he understood the loan to be a private one "has no probative value because the test is an objective one, and does not depend on Plaintiff's understanding." A-272.

The only other evidence Mader put forward at summary judgment was a 2014 Navient prospectus offering student loan-backed notes to investors and describing the loans as privately funded, A-112, but—even if a 2014 prospectus was probative about a 2008 loan—that one type of loan in a program is privately funded does not address whether the program is funded in whole or in part by a governmental or nonprofit entity. *See In re Pilcher*, 149 B.R. 595, 598–600 (B.A.P. 9th Cir. 1993) (finding private student loan non-dischargeable because it was issued under a program that included loans subsidized by the federal government).[7]

_____

[7] Another SEC document submitted to the court by Mader post-summary judgment—a 2004 Form 10-K—confirms that Excel Grad Loans and federal loans were "marketed to schools through the same marketing channels" and used "the same sales force," which corroborates that they were offered as part of a single program. A-264; *see Pilcher*, 149 B.R. at 599 (finding program that included private

On this record, it was unrebutted that Mader's student loan was issued through a program funded at least in part by a governmental unit or nonprofit organization. *See O'Brien*, 419 F.3d at 106; *see also Pilcher*, 149 B.R. at 598–600.

### 2. Plaintiff's other counter-arguments are unavailing

Mader's other arguments lack merit and should be rejected.

Mader contends that "[t]o come within the terms of (A)(i), the borrower's default must have some impact on the federal fisc." Pl.'s Br. at 44. But that is contrary to the plain language of § 523(a)(8), which requires only that the program overall be financed in part by a government entity, *not* that the specific loan at issue involve federal funding. This Court rejected the same argument in *O'Brien*, holding that the governmental or nonprofit entity need only fund part of the program, not the specific loan, for the debt to fall under (A)(i). *See* 419 F.3d at 106.

Likewise, in *Pilcher*, a loan program that included two types of federal loans and "a private loan that does not receive a federal subsidy" was a single program under § 523(a)(8) because it "was an integrated effort to provide a streamlined method for the procurement, processing and service of law school educational loans." *See* 149 B.R. at 599–600.

---

and federal loans a single program because it "was an integrated effort to provide a streamlined method for the procurement, processing and service of law school educational loans").

Mader also argues that the district court did not define the program at issue with enough specificity, but as discussed above sufficient evidence existed to show that Mader's loan came under a program that included Stafford Loans. The district court did not need to decide whether Excel Grad Loans and Stafford Loans were part of a single program targeted at "graduate and professional students," which included law, medical, and MBA students, or whether law, medical, and MBA loan programs were separate programs and the program here only targeted other graduate and professional students. A-142. Instead, the court reasonably concluded it did not matter, because the evidence more than showed that, either way, the loan was non-dischargeable.[8]

In this respect, the circumstances are identical to those in *In re Drumm*, which (like this case) involved a privately-funded Excel loan issued by Nellie Mae. 329 B.R. 23 (Bankr. W.D. Pa. 2005). The parties in *Drumm* stipulated that "[a]t the time Mr. Drumm's loans were originated, the Nellie Mae Corporation … offered not only the privately funded … Excel Loan that Mr. Drumm received, but also offered student loans originated under programs fully funded and/or insured by the federal

---

[8] The fact Mader could not take out federal loans for Reformed Theological Seminary does not change the analysis. Navient's graduate loan program does not split into separate programs just because borrowers' maximum federal loan amounts are $0 in certain circumstances. All of Experian's evidence shows that the application, promissory note, and loan remains the same regardless of whether a student attends a Title IV school.

government, including, but not limited to PLUS and Stafford loans." *Id.* at 29. One of the two independent grounds on which the court held that the loan was non-dischargeable was that the program *as a whole* was funded in part by a government unit, in that Nellie Mae "had available in its 'program' loans that were funded by both private for-profit entities as well as loans funded by governmental units" even though—as here—"the loan to the Debtor was privately funded, rather than a government-funded loan . . . because the school Debtor chose was not qualified to receive governmentally funded student loans." *Id.* at 35.

The cases cited by Mader either involve irrelevant questions about a program's scope or involve scenarios where the evidence did not establish that the program received federal or nonprofit funds even in part. *See, e.g.*, *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605, 611 (1986) (under grant statute it was clear recipient of funds was just "airport operators" and not the "airlines" themselves); *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 636 (1984) (holding that lower courts failed to make factual findings or consider the question of whether program had received federal financial assistance); *Grove City Coll. v. Bell*, 465 U.S. 555, 570–72 (1984) (holding that a "program" under Title IX is not "the entire College" if federal aid goes only to a school's "student financial aid program" and not "to the entire institution"), *superseded by statute as recognized in Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 466 n.4 (1999); *United States v.*

*Univ. Hosp.*, 729 F.2d 144 (2d Cir. 1984) (discussing in dicta that record lacked evidence about whether funds are allocated to overall hospital or programs hospital may conduct).

Finally, Mader's attempt to expand the record to include evidence from his Rule 60(b) motion is both improper and—at best for Mader—irrelevant. Evidence first introduced on a Rule 60(b) motion is not part of the record on review of the district court's summary judgment decision. *See, e.g.*, *United States ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 438 (5th Cir. 2014) (reviewing new evidence separately). In any event, as addressed in detail below, with respect to Mader's appeal of the Rule 60(b) ruling, the additional evidence supports Experian, not Mader; indeed, it includes an additional Navient witness corroborating Mr. Zemetro's testimony.

### B. Mader's Claim That Experian Should Have Made A Legal Judgment That His Debt Was Discharged Fails To Satisfy The § 1681e(b) Requirement Of A Factual Inaccuracy.

Even aside from Mader's failure to rebut the evidence that his loan was non-dischargeable, he failed to satisfy the inaccuracy element on an independent ground: his claim that Experian should have made the quintessentially legal determination that his debt was discharged in bankruptcy fails to satisfy the "inaccuracy" element of § 1681e(b). The FCRA does not require credit reporting agencies to adjudicate legal disputes, and the failure to do so is not an "inaccuracy" under § 1681e(b).

"All circuit courts to have opined on whether accuracy in the FCRA context includes legal inaccuracies are unanimous: The claimed inaccuracy must be factual, not legal." *Sessa v. Linear Motors, LLC*, No. 19-CV-9914 (KMK), 2021 WL 6052134, at *7 (S.D.N.Y. Dec. 20, 2021) (internal quotation marks omitted). And although this Court has yet to address the issue in a published opinion, it "has also affirmed a 'well-reasoned [district court] order' that adopted this interpretation." *Id.* (quoting *Okocha v. Trans Union LLC*, 488 F. App'x 535, 536 (2d Cir. 2012) (summary order) (affirming *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011))).

As the First Circuit explained in *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008), when a consumer claims that his debt was invalid, "[d]etermining whether [the consumer] was entitled to stop making . . . payments is a question for a court to resolve in a suit against [the creditor] . . . not a job imposed upon consumer reporting agencies by the FCRA." *Id.* at 68. A consumer cannot make an FCRA claim out of what is in essence a "collateral attack against a lender." *Id.* Credit reporting agencies, as the Ninth Circuit held, "are not tribunals." *Carvalho*, 629 F.3d at 891; *accord Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020); *Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015).

In short, under the FCRA, "a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions." *Chiang*, 595 F.3d at 38. And "whether a specific account was discharged in a particular consumer's . . . bankruptcy" is precisely the sort of legal question that a consumer reporting agency is "neither qualified nor obligated to answer." *Hupfauer v. Citibank, N.A.*, No. 16-C-475, 2016 WL 4506798, *7 (N.D. Ill. Aug. 19, 2016).

In the present case, determining whether Mader's student loan debt was discharged would have required not only legal analysis, but underlying factual information—concerning the loan program under which Mader borrowed—to which a credit reporting agency would have had no access. That is not the role of a credit reporting agency under the FCRA—particularly where, as here, Mader himself treated the loan as valid and Experian was never alerted to any dispute.[9] Rather, "a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher," *Carvalho*, 629 F.3d at 892, and such a dispute ultimately "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting

---

[9] If Mader had reported the dispute to Experian, he would not have been entitled to have Experian adjudicate it, but the FCRA would have given him the right to "file a brief explanatory statement to be reported along with the disputed item," so that "potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *Carvalho*, 629 F.3d at 892 (citing 15 U.S.C. § 1681i(b)-(c)) (internal quotation marks omitted).

agencies by the FCRA." *DeAndrade*, 523 F.3d at 68. Indeed, if there was a disagreement between Mader and Navient over his loan's dischargeability, the bankruptcy code provides the proper procedure: the initiation of an adversary proceeding so that the bankruptcy court can adjudicate whether the loan was discharged. *E.g.*, *In re Hull*, No. 18-32076, 2021 WL 1602880 at *3–8 (Bankr. W.D. Ky. Apr. 23, 2021) (adjudicating bankruptcy adversary proceeding brought by debtor seeking a discharge of her student loans). Experian is not a bankruptcy court, and it has no power or ability to make such a legal adjudication, as courts across the country have uniformly recognized.

In sum, Mader's claim that Experian should have determined that his debt was discharged cannot satisfy the inaccuracy requirement of 15 U.S.C. § 1681e(b).

## II. Experian Was Also Entitled To Summary Judgment Because No Reasonable Jury Could Find That Experian's Procedures Were Unreasonable.

Even if Mader were able to establish an inaccuracy, Experian was entitled to summary judgment on the independent ground that its reliance on Navient's reporting of Mader's debt—when Mader himself treated the debt as valid, and in the absence of any notice that Mader contested its validity—was not an unreasonable procedure under § 1681e(b).

The FCRA does not require credit reporting agencies to be infallible, *see Wenning v. On-Site Manager, Inc.*, No. 14-Civ-9693, 2016 WL 3538379, at *16

(S.D.N.Y. June 22, 2016); nor does the FCRA impose strict liability. *Frederick v. Capital One Bank, N.A.*, No. 14-CV-5460, 2015 WL 5521769, at \*7 (S.D.N.Y. Sep. 17, 2015) ("even if some information in a consumer credit report is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it") (internal quotation marks omitted). Instead, under § 1681e(b), the FCRA requires only that credit reporting agencies follow "reasonable" procedures in reporting debts.

In particular, in the absence of a consumer dispute Experian is entitled to rely upon reliable sources of credit information in reporting consumer debts. *See, e.g., Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1035 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997) (a credit reporting agency is "entitled to report [the debt at issue], at least until it heard from [the] plaintiff directly"); *Frydman*, No. 14-CV-9013, 2016 WL 11483839 at \*14 (S.D.N.Y. Aug. 11, 2016) (same); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (consumer reporting agencies are not required "to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (same; extending *Henson* to "records from financial institutions"); *Wright*, 805 F.3d at 1239–41 (same); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or. 2007) ("If a consumer reporting agency accurately transcribes, stores and communicates consumer information received

from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§1681e(b)] simply by reporting an item of information that turns out to be inaccurate.").

Moreover, absent "prevalent unreliable information" from a particular lender or a consumer dispute, no independent "requirement to investigate would be reasonable given the enormous volume of information Experian processes daily." *Sarver*, 390 F.3d at 972-73; *Frydman*, 2016 WL 11483839, at *12-13 (same; following *Sarver*); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2013 WL 1430467, at *7 (S.D.N.Y. Apr. 8, 2013) (same; following *Sarver); Crump v. Carrington Mortg. Svcs.*, No. 18-C-2302, 2019 WL 118490, at *6 (N.D. Ill. Jan. 7, 2019) (following *Sarver*, and holding that "prior to receiving [plaintiff's] dispute letter, Experian did not violate § 1681e(b) by relying on the information that [the furnisher] reported[.]").

Nor is it a consumer reporting agency's obligation to monitor the proceedings of a consumer's bankruptcy—scouring the pleadings, deciphering their legal consequences, and applying those legal consequences to a consumer's credit file— to determine whether a debt was discharged. *Hupfauer*, 2016 WL 4506798, at *7 (dismissing FCRA claims because a third party credit bureau is not required "to determine whether a specific account was discharged in a particular consumer's . . . bankruptcy"). But even if the law imposed such an obligation, there is nothing in

the bankruptcy court's file that would have indicated the nature of the program under which Mader borrowed. Moreover, soon after the bankruptcy proceedings had concluded, Mader signed a loan modification agreement, which was communicated to Experian and indicated that the loan was not discharged. And, after modifying the payment terms, Mader, over the next four years, made payments on the loan, which were communicated to Experian.

Under these circumstances, Experian's reporting of the debt was manifestly reasonable, and there was no additional "reasonable procedure" that would have led Experian to report the debt as discharged.

Mader contended below that credit reporting agencies should be required to determine at the inception of a student loan whether the loan is for tuition at a non-Title IV school (one ineligible for federally funded loans), and to delete all student loans, post-bankruptcy, made for such schools. But Mader's premise is incorrect, because loans for non-Title IV schools are not necessarily dischargeable—their dischargeability turns on whether they are part of a *program* funded in part by a qualified institution. *See O'Brien*, 419 F.3d at 106. Moreover, a non-Title IV school might also be "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training," which would render a loan non-dischargeable under Subdivision B of the statute. *See* 11 U.S.C.

§ 523(a)(8)(B); 26 U.S.C. § 221(d)(2)(B). Finally, consumers often consolidate their student loans. Thus, a student loan that may be dischargeable when it was disbursed may become non-dischargeable if it is later consolidated with other loans. *See In re Moon*, 610 B.R. 616, 618 at *6 (Bankr. E.D. Wis. Dec. 18, 2019) (suite of consolidated loans non-dischargeable because the consolidating loan was made under a program that was funded in part by a nonprofit). Thus, collecting school information at loan inception would not determine whether the debt on that loan ultimately would be discharged in bankruptcy.

In *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015), the plaintiff also claimed that Experian should have utilized a different procedure concerning the reporting of bankruptcy-related debts. In affirming the district court's grant of summary judgment to Experian, the court explained that the "procedure urged by the plaintiff is not 'reasonable,'" as it "would put an enormous burden on the consumer credit reporting agencies." *Id.*, at 747. Here, Mader's proposed procedure not only would require consumer reporting agencies to collect and store data elements that are not indicative of whether a loan would be discharged, but would require Experian in some cases to erroneously report valid debts as discharged.

Although the question whether a credit reporting agency followed reasonable procedures is ordinarily for the fact-finder, "in cases where CRAs clearly employ

reasonable procedures, the issue may be decided on summary judgment." *Wright*, 805 F.3d at 1239; *accord Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *see also Podell*, 112 F.3d at 104-05 (affirming grant of summary judgment in reasonable procedures investigation case). In this case, no rational jury could find that Experian's reliance on Navient's reporting, in the absence of notice of any dispute, was unreasonable.

## III. The District Court Properly Rejected Mader's Rule 60(b) Motion

The district court did not abuse its discretion in denying Mader's Rule 60(b) motion. "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Broth. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Exceptional circumstances do not exist here. Rather, Plaintiff's belated attack on the Zemetro Declaration via use of Mr. Zemetro's testimony in another case ("Zemetro's Deposition") merely showcases Mader's failure to contest key facts before summary judgment.

### A. Denying Mader's Rule 60(b)(2) Motion Was Not An Abuse Of Discretion.

Rule 60(b)(2) provides that a "court may relieve a party or its legal representatives from a final judgment, order, or proceeding" on the grounds of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." This is an "onerous standard to meet." *Int'l Broth.*, 247 F.3d at 392. To obtain relief, a "movant must

demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Id.* (quoting *United States v. IBT*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

The district court provided three independent and cogent bases for rejecting Mader's Rule 60(b)(2) motion. None of them was an abuse of discretion.

First, Mader was not "justifiably ignorant" of the evidence contained in Zemetro's Deposition, because Mader could have—but chose not to—depose Mr. Zemetro or a different Navient employee in this case. In particular, Mader could have sought to depose a Navient employee to ask questions about Excel Grad Loans, but chose not to. He could have sought leave to depose Mr. Zemetro after Mr. Zemetro submitted his declaration in this case, but never made any such application to the district court. Mader's motion should fail given that complete absence of due diligence. *See Lorusso v. Borer*, 260 F. App'x 355, 357 (2d Cir. 2008) (holding that district court did not abuse its discretion in denying Rule 60(b)(2) motion given that plaintiffs "made a deliberate choice not to depose [a witness] prior to trial" despite having had the opportunity to do so); *Boule v. Hutton*, 170 F.Supp.2d 441, 444–45 (S.D.N.Y. 2001) (denying motion given failure to pursue lead discovered months

ahead of time to move for new trial), *aff'd* 328 F.3d 84, 95 (agreeing with district court's analysis of diligence).

Second, the district court did not abuse its discretion in finding that plaintiff failed to show knowledge of the Zemetro Deposition "would have changed the outcome in this case," A-280, which would have required Mader to show the evidence "*probably* would have changed the outcome." *Int'l Broth.*, 247 F.3d at 392 (emphasis added). Nothing in the deposition rebuts the substance of Mr. Zemetro's declaration that the Navient Loan was made as a part of a program that includes Stafford Loans; rather, it merely questions the basis for Mr. Zemetro's knowledge of those facts. And it does not remedy Mader's failure to provide any contrary evidence supporting his claim that the loan was dischargeable.

Third, because the evidence at best impeaches Mr. Zemetro the motion fails. Nothing Mr. Zemetro says in his deposition contradicts his statement that the Navient Loan is part of a program funded, in part, by governmental units or nonprofit institutions. In fact, he stated in the deposition—consistent with his declaration— that it was his understanding that Excel Grad Loans were part of a program funded in part by nonprofit organizations or govern units. A-213–15. Mader argues that the deposition shows Mr. Zemetro "had no factual basis at all to assert that the Excel Grad loan was funded in part by the federal government." Plaintiff's Brief at 51. But that is mere impeachment, which cannot support a Rule 60(b)(2) motion. *See*

*Mirlis v. Greer*, 952 F.3d 36, 50 (2d Cir. 2020) (holding district court did not err in denying Rule 60(b)(2) motion because evidence plaintiff "was a frequent liar" was "merely impeachment evidence").  And it is also contradicted by the deposition, in which Mr. Zemetro testified that his knowledge about Navient allowed him to understand the loan application and promissory note documents, which supported his factual assertion.  A-212, 215.

Notably, the additional Navient deposition testimony Mader included in his motion unequivocally corroborated Mr. Zemetro.  The additional witness, Patty Peterson, testified that "[i]n this particular program, our private student loans are a part of a program that goes along with our Stafford loans, that are part of the program that a customer can choose from, in order to get their education benefit.  So again, most of our private student loans fall under this definition [of a program funded in whole or in part by a government unit]."  A-231.

## B. Denying Mader's Rule 60(b)(3) Motion Was Not An Abuse Of Discretion.

The district court did not abuse its discretion in denying Mader relief under Rule 60(b)(3).  To obtain relief under Rule 60(b)(3), a plaintiff must show "clear and convincing evidence of material misrepresentations."  *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989).  And the "movant must show that the conduct complained of prevented the moving party from fully and fairly presenting

his case." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (quotation marks omitted).

Mader comes nowhere close to showing that Experian engaged in such fraud or misrepresentation, as the district court correctly concluded. Mader failed to show that any of Mr. Zemetro's Declaration statements was incorrect, let alone that Mr. Zemetro made a material misrepresentation or that *Experian* had knowledge of any misrepresentation. As discussed above, Mader's argument that Mr. Zemetro "had no factual basis" to discuss what program Excel Grad Loans were part of is disproven by his deposition and declaration, both of which state that he relied on Navient documents and his personal knowledge. The fact Mr. Zemetro had to review documents before gaining specific knowledge about Excel Grad Loans is not inconsistent with his Declaration, and certainly provides no evidence that Experian was aware of any falsity. Mader also states that Mr. Zemetro attested in his Declaration "that obtaining an Excel Grad loan was conditioned on first maximizing one's federal loans," Pl.'s Br. at 52, which is consistent with the loan application documents, A-41 ¶ 4, A-142, but then later "testified that was not true." Pl.'s Br. at 52. Mader declines to provide a citation to support this assertion, which makes sense given that Mr. Zemetro never testified that obtaining an Excel Grad loan is *not* conditioned on first maximizing one's federal loans. And Mader did take out the

maximum amount of federal loans he could ($0) before obtaining the Excel Grad Loan.

In sum, the district court correctly rejected the Rule 60(b) motion, on multiple grounds.

## CONCLUSION

The District Court's judgement should be affirmed.

Dated: February 18, 2022

By: /s/ Meir Feder

JONES DAY
Meir Feder
Kerianne N. Tobitsch
Jack Millman
250 Vesey Street
New York, New York 10281
(212) 326-7870


John A. Vogt
3161 Michelson Drive, Suite 800
Irvine, California 92612
(949) 553-7516

*Attorneys for Defendant-Appellee Experian Information Solutions, Inc.*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as modified by this Court's Local Rule 32.1(a)(4)(A) because this brief contains 7,563 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.


February 18, 2022                              /s/ Meir Feder
                                               Meir Feder