# 20-3073(L)
# 21-2171(Con)

United States Court of Appeals
for the Second Circuit

MICHAEL MADER,

*Plaintiff-Appellant*,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Southern District of New York

**REPLY BRIEF OF APPELLANT**

March 11, 2022

Adam R. Shaw
George F. Carpinello
Jenna C. Smith
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
(518) 434-0600

*Counsel for Appellant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION ................................................................1

ARGUMENT ....................................................................2

  I.  EXPERIAN FAILED TO MEET ITS BURDEN OF SHOWING THAT THERE WAS NO GENUINE DISPUTE OF MATERIAL FACT THAT MR. MADER'S LOAN WAS MADE BY A FEDERALLY FUNDED PROGRAM.....................................................................2

  II. EXPERIAN'S REPORTING WAS FACTUALLY INACCURATE AND EXPERIAN FAILED TO USE REASONABLE PROCEDURES TO ENSURE THE MAXIMUM ACCURACY OF ITS REPORTING. ..............9

     A.   This Court Should Not Address Issues That Were Not Ruled On By The Court Below. .......................................................9

     B.   Experian's Reporting Was Factually Inaccurate....................10

     C.   Experian Did Not Maintain Reasonable Procedures to Assure Maximum Possible Accuracy as a Matter of Law.....................................15

CONCLUSION..................................................................21

CERTIFICATE OF SERVICE ...............................................23

CERTIFICATE OF COMPLIANCE .......................................24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2nd Cir. 2012)....................................................................... 9

*Bacolitsas v. 86th & 3rd Owner*,
    702 F.3d 673 (2d Cir. 2012)...................................................................... 9

*Baker v. Dorfman*,
    239 F.3d 415 (2d Cir. 2000)...................................................................... 9

*Benjamin v. Experian Info. Sols., Inc.*,
    2021 WL 4260887 (N.D. Ga. Sept. 20, 2021) ...................................... 14

*Bethpage Fed. Credit Union v. Furio* (*In re Furio*),
    77 F.3d 622 (2d Cir. 1996)....................................................................... 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1991) ................................................................................. 3

*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010).................................................................... 20

*Crabill v. Trans Union, L.L.C.*,
    259 F.3d 662 (7th Cir. 2001)................................................................... 16

*Crump v. Carrington Mortg. Servs., LLC*,
    2019 WL 118490 (N.D. Ill. Jan. 7, 2019) ............................................. 13

*Denton v. Hyman* (*In re Hyman*),
    502 F.3d 61 (2d Cir. 2007)....................................................................... 3

*DiBattista v. Selene Finance LP* (*In re DiBattista*),
    615 B.R. 31 (S.D.N.Y. 2020) ................................................................. 11

*Fallick v. Kehr*,
    369 F.2d 899 (2d Cir. 1966)..................................................................... 5

*Frydman v. Experian Info. Sols., Inc.*,
    2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016) .................................................. 14

*Galea v. Wells Fargo Bank, N.A.*,
    388 F. Supp. 3d 1212 (E.D. Cal. 2019) ........................................................... 13

*Gorman v. Experian Info. Sols., Inc.*,
    2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) ................................................ 16

*Greensward, Inc. v. Cietek* (*In re Cietek*),
    390 B.R. 773 (Bankr. N.D.N.Y. 2008) ............................................................. 5

*Grogan v. Garner*,
    498 U.S. 279 (1991) ........................................................................................... 3

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ........................................................................... 15

*Helmes v. Wachovia Bank, N.A.* (*In re Helmes*),
    336 B.R. 105 (Bankr. E.D. Va. 2005) ............................................................. 12

*Hemar Service Corporation of America, Inc. v. Pilcher* (*In re Pilcher*),
    149 B.R. 595 (BAP 9th Cir. 1993) .................................................................... 7

*Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*),
    3 F.4th 595 (2d Cir. 2021) ............................................................................. 3, 8

*In re Haroon*,
    313 B.R. 686 (Bankr. E.D. Va. 2004) ............................................................. 15

*Teran v. Navient Solutions, LLC* (*In re Teran*),
    2022 WL 472939 (Bankr. N.D. Cal. Feb. 15, 2022) .................................. 5, 6, 7

*Torres v. Chase Bank USA, N.A.* (*In re Torres*),
    367 B.R. 478 (Bankr. S.D.N.Y. 2007) ........................................................... 11

*Losch v. Nationstar Mortgage LLC*,
    995 F.3d 937 (11th Cir. 2021) ............................................................. 10, 11, 13

iv

*Mader v. Experian Info. Sols., LLC*,
    2020 WL 264396 (S.D.N.Y. Jan. 17, 2020) ...............................................*Passim*

*Midland Funding, LLC v. Johnson*,
    37 S. Ct. 1407 (2017) ......................................................................... 11

*Morris v. Experian Info. Sols., Inc.*,
    478 F. Supp. 3d 765 (D. Minn. 2020) ................................................. 13

*Myrick v. Equifax Info. Servs., LLC*,
    2017 WL 4798154 (E.D. N.C. Oct. 24, 2017) ..................................... 17

*O'Brien v. First Marblehead Education Resources, Inc.* (*In re O'Brien*),
    419 F.3d. 104 (2d. Cir. 2005) .......................................................... 7, 8

*Ocasio v. CoreLogic Credco, LLC*,
    2015 WL 5722828 (D. N.J. Sept. 9, 2015) .......................................... 21

*Renshaw v. Renshaw* (*In re Renshaw*),
    222 F.3d 82 (2d Cir. 2000) .............................................................. 3, 4

*Shakespeare v. Compu-Link Corp.*,
    848 F. App'x 474 (2nd Cir. 2021) ...................................................... 9

*Shimon v. Equifax Info. Servs. LLC*,
    994 F.3d 88 (2d Cir. 2021) ............................................................... 10

*Turner v. J.V.D.B. & Assocs., Inc.*,
    330 F.3d 991 (7th Cir. 2003) ............................................................. 12

*Watson v. Caruso*,
    2019 WL 6463468 (D. Conn. Dec. 02, 2019) ...................................... 21

*Wenning v. On-Site Manager, Inc.*,
    2016 WL 3538379 (S.D.N.Y. 2016) ................................................... 15

*White v. Trans Union, LLC*,
    462 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................................. 12

*Wilson v. Corelogic SafeRent, LLC*,
  2017 WL 4357568 (S.D.N.Y. Sept. 29, 2017) ..................................................... 20

*Wright v. Experian Info. Sols., Inc*.,
  2014 WL 4056961 (D. Co. Aug. 14. 2014) ......................................................... 21

**Statutes**

11 U.S.C. § 523(a)(8) .......................................................................................... 7, 17

11 U.S.C. § 523(a)(8)(A) ............................................................................ 3, 4, 8, 14

11 U.S.C. § 523(a)(8)(A)(i) ....................................................................................... 3, 5

15 U.S.C. § 1681 .................................................................................................... 1

**Regulations**

16 C.F.R. 600 app.§ 607(b)(3)(F)(2) ..................................................................... 12

## **INTRODUCTION**

This appeal boils down to one issue—whether Experian has provided sufficient evidence to support a finding on summary judgment that Appellant Michael Mader's Excel Grad loan was made under a federally funded program. It has not. The Excel Grad loan program is a private program without any federal funding. The district court ignored evidence submitted by Mr. Mader showing the purely private nature of the Excel Grad loan program. Accordingly, the district court's entry of summary judgment below should be vacated.

Experian's other arguments should not be considered because they were not addressed by the district court below. However, Experian's argument that it cannot be held liable for merely misreporting a legal dispute misses the mark. Experian's derogatory reporting that the discharged debt at issue was "charged off," "22,785 written off," "8,519 past due," had a "recent balance $22,890" and was still due and owing is factually inaccurate and redressable under 15 U.S.C. § 1681 *et seq.*, of the Fair Credit Reporting Act ("FCRA"). Indeed, Experian makes the exact same reporting determinations every day regarding whether or not credit card debts, mortgages, and other consumer debts have been discharged. By purposefully treating all student loan debts as non-dischargeable, Experian *is* making a determination about how to report debts like Mr. Mader's—it is determining that all such debts should be reported as not discharged and still due

1

and owing, even though it knows that many types of student loan debts are, in fact, dischargeable.

Experian also wrongly contends that its procedures were reasonable as a matter of law to ensure maximum possible accuracy. The reasonableness of Experian's reporting procedures is a factual question for the jury that requires balancing the harm of inaccuracy against the burden of instituting safeguards. The failure to have any procedures in place to prevent inaccuracy is unreasonable. Further, as numerous courts—including the district court below when ruling on the motion to dismiss—have held, solely relying on a third party's information without any independent verification is not *per se* reasonable. That is particularly true here, where there is objective information readily available about the public and private nature of the loan and whether it was issued for a Title IV institution. Experian already requires some of this information to be reported (public vs. private) and imposes other similar procedural requirements for scores of other types of debts.

## **ARGUMENT**

## I.  **EXPERIAN FAILED TO MEET ITS BURDEN OF SHOWING THAT THERE WAS NO GENUINE DISPUTE OF MATERIAL FACT THAT MR. MADER'S LOAN WAS MADE BY A FEDERALLY FUNDED PROGRAM.**

To prevail on summary judgment, Experian had to show that there was no genuine dispute of material fact as to whether Mr. Mader's loan was made by a

federally funded program. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1991). It failed to do so. The only proof Experian submitted below was a declaration that restated the language contained in the promissory note for the loan. On this appeal, Experian provides no other proof or explanation as to why or how the loan was part of a federally funded program.

Experian violated the Fair Credit Reporting Act because it reported amounts as past due and still owing on Mr. Mader's loan when, in fact, the loan had been discharged in bankruptcy. Thus, the underlying question on the motion for summary judgment was whether Mr. Mader's loan was nondischargeable under 11 U.S.C. § 523(a)(8)(A)(i). Because Mr. Mader was the non-moving party, all of the evidence should have been viewed in the light most favorable to Mr. Mader. In addition, the exceptions to discharge contained in § 523(a)(8)(A) are to be construed narrowly to support the Bankruptcy Code's fundamental purpose—to provide debtors with a fresh start. *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 3 F.4th 595, 600 (2d Cir. 2021); *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007); *Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77 F.3d 622, 624 (2d Cir. 1996).

Moreover, it is the creditor's burden—not Mr. Mader's— to show that an exception to discharge applies. *Grogan v. Garner*, 498 U.S. 279, 283 (1991) (referring to the burden a creditor must meet to avoid dischargeability); *Renshaw v.*

3

*Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000) ("creditor [must] prove by a preponderance of the evidence that its claim is one that is not dischargeable.")

As Mr. Mader demonstrated, he received an Excel Grad loan from Navient's predecessor, Sallie Mae, to attend the Reformed Theological Seminary, which is not a Title IV institution under the Higher Education Act. Thus, Mr. Mader was not eligible for any loan guaranteed or funded by the federal government. That is the reason Mr. Mader applied for and received a private loan from Sallie Mae. As demonstrated in Mr. Mader's opening brief and evidenced below, the Excel Grad loan program is an entirely private loan program funded entirely by private money. There was, and never has been, any government or nonprofit money used to fund the Excel Grad loan program. For these reasons, Mr. Mader's loan was discharged in bankruptcy and does not qualify for any of the narrow exceptions to discharge contained in § 523(a)(8)(A).

The district court below ignored the evidence submitted by Mr. Mader which demonstrated that the Excel Grad loan program was funded entirely with private funds and instead based its decision on the declaration of Navient employee John Zemetro, who relied entirely upon reading the boilerplate language in Mr. Mader's loan application that purported to make the loan nondischargeable. The boilerplate language by itself is insufficient to render the loan dischargeable because it is against public policy to use contractual language to waive bankruptcy

protection. *See Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966); *Greensward, Inc. v. Cietek* (*In re Cietek*), 390 B.R. 773, 779-780 (Bankr. N.D.N.Y. 2008). In other words, parties cannot contract to convert a dischargeable loan into a non-dischargeable loan. Mr. Zemetro could not cite any independent evidence to support the statement in his declaration that, in fact, the Excel Grad loan program was in any way funded by federal funds. There is simply no evidence to support this contention, including no evidence of financial arrangements, payments, invoices, contracts, or correspondence to show that the program was federally funded.

Nonetheless, the lower court erroneously relied entirely upon the *ipse dixit* embodied in the boilerplate and repeated in Mr. Zemetro's declaration that characterized the Excel Grad loan as being part of a program that also made federal loans. The lower court erroneously found that the loan came within the terms of § 523(a)(8)(A)(i). But in order for a loan to come within the narrow terms of that section, Experian had to show that the Excel Grad loan program was *actually funded* with federal money. This it failed to do.

The lower court's acceptance of Experian's and Navient's conclusory statements as to what constitutes a federally funded loan was recently rejected in *Teran v. Navient Solutions, LLC* (*In re Teran*), Adv. Pro. No. 20-03075, 2022 WL 472939 (Bankr. N.D. Cal. Feb. 15, 2022), a case involving nearly identical

arguments to those made here. While the *Teran* decision is not binding on this Court, its reasoning is unassailable. In that case, Navient first argued that Mr. Teran's loan was funded by a nonprofit, pointing to a 1995 agreement that showed some nonprofit funding went into the "Law Loans" program. But the court pointed out that Navient had produced no evidence whatsoever to show that the Law Loans program, in fact, was funded by nonprofit money when Mr. Teran took out his loan.

Navient then pivoted to an argument that the Law Loans program was part of a program that also made Stafford loans, citing its own Quick Reference Guide which "advertised Law Loans' ability to grant Stafford loans." *In re Teran*, 2022 WL 472939 at *4. That is the exact same argument that Experian makes here. The *Teran* court easily rejected that argument, holding that Navient's advertising could not be relied upon to show that the Law Loans program is a government program without actually providing evidence of such government funding. *Id.* Indeed, the court noted that Navient's argument was expressly contrary to disclosures it made to investors in student loan-backed securities offered by Sallie Mae, which described the Law Loans program as a private loan program that supplemented federal Stafford loans. *Id*. Similarly here, Navient provided no evidence that the Excel Grad program was actually funded by the government and, as in *Teran*, Mr. Mader provided clear evidence that Sallie Mae and Navient expressly identified the

6

Excel Grad program in their investor disclosure documents as a private loan program that was supplemental to Stafford loans.

In so holding, the court in *Teran* rejected Navient's reliance on *Hemar Service Corporation of America, Inc. v. Pilcher* (*In re Pilcher*), 149 B.R. 595 (BAP 9th Cir. 1993), a case expressly relied upon by Experian here. As noted by the *Teran* court, "[u]nlike *Pilcher* and every other case cited by Navient, Navient admits that there is no evidence that any nonprofit was involved with the LAWLOANS program by the time Teran took out his Bar Loan in 2008. Without any evidence of nonprofit involvement in the LAWLOANS program, the court is unable to apply the law of *Pilcher* to this matter. Without such evidence, it is unclear whether LAWLOANS could even legally originate Stafford loans." *In re Teran*, 2020 WL 472939 at *3.

Just as the court did in *Teran*, this Court should reject Experian's attempt to bootstrap Mr. Mader's loan into § 523(a)(8) by merely stating, rather than proving, that its Excel Grad loan program is a federally funded loan program.

Experian also repeats the red-herring argument that, to be dischargeable, the loan itself need not be federally funded and that it is enough if the loan is made under a "program" that is federally funded, citing this Court's decision in *O'Brien v. First Marblehead Education Resources, Inc.* (*In re O'Brien*), 419 F.3d. 104 (2d. Cir. 2005). Mr. Mader agrees that the Court should look at whether the program is

federally funded and not the individual loan. But here, there is absolutely no proof that the program was actually federally funded. In fact, the proof shows that the program was entirely funded by private sources.

For this reason, *O'Brien* does not control here. In *O'Brien*, there was proof that a nonprofit guaranteed the program at issue—indeed, the nonprofit, TERI was the actual party in the case seeking to enforce the loan. In contrast, here there is no evidence of government or nonprofit involvement at all.

To try and explain why the loan at issue was not made under a federally funded program, Mr. Mader explained in his opening brief what constitutes a federal program and explained that marketing a private loan as a "supplement" or as a "complement" to a federal loan does not demonstrate that the loan was "made under" a federally funded program. *See also In re Homaidan*, 3 F.4th at 601 (characterizing § 523(a)(8)(A) as "dense language" creating three categories of educational debt cannot be discharged in bankruptcy, including in pertinent part "loans and benefit overpayments **backed** by the government or a nonprofit . . .") (emphasis added). In response, Experian doubles down and argues that it need not make any showing at all about the program, about how the program was "backed" by the government, or how the loan was made under any program at all. But it was Experian's burden on summary judgment to show that that there was no genuine issue of material fact that Mr. Mader's loan was federally funded. Mr. Mader need

not prove a negative; he need not prove that the loan was not part of a federally funded program. In any event, Mr. Mader provided uncontroverted proof that there was no federal funding involved.

## II. EXPERIAN'S REPORTING WAS FACTUALLY INACCURATE AND EXPERIAN FAILED TO USE REASONABLE PROCEDURES TO ENSURE THE MAXIMUM ACCURACY OF ITS REPORTING.

### A. This Court Should Not Address Issues That Were Not Ruled On By The Court Below.

Experian devotes much of its brief to issues that were not addressed by the court below. This Court should not consider Experian's alternate arguments because this Court generally does not consider arguments not addressed by the district court. *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 477 (2nd Cir. 2021) ("We decline to address Celink's other arguments advocating for dismissal of this claim, as the district court has not yet ruled on them."); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2nd Cir. 2012) ("Because the district court did not consider these arguments in the first instance, we remand to the district court to determine whether dismissal is appropriate on any of these alternate grounds."); *Bacolitsas v. 86th & 3rd Owner*, 702 F.3d 673, 681 (2d Cir. 2012) ("generally we decline considering arguments not addressed by the district court"); *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) ("[A] federal appellate court does not consider an issue not passed upon below." (citations omitted)).

9

This is especially true here, where the issue involves a question of fact: whether Experian's procedures for reporting loans such as Mr. Mader's as not discharged in bankruptcy were reasonable.

## B. Experian's Reporting Was Factually Inaccurate.

In this circuit, "a credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (citations omitted). Experian argues that its negative reporting of Mr. Mader's debt as "charged off," "22,785 written off," "8,519 past due," and still due and owing with a "recent balance $22,890" (A-25, A-137, A-165) is a legal determination and not a factual inaccuracy for which it can be held liable.

Experian is wrong and its argument has been rejected repeatedly by numerous courts. Most recently in *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021), Experian argued that "a bankruptcy discharge is merely an injunction against certain means of enforcing a debt, not an expungement of a debt from one's record" and thus "it did nothing wrong by reporting a debt that still existed." *Losch*, 995 F.3d at 945. The Eleventh Circuit held that "[a]lthough a bankruptcy discharge doesn't 'expunge' a debt, Experian's report was still factually inaccurate. Experian didn't just report the existence of a debt but also the

balance that Losch owed, the amount that Losch was past due, and how long Losch was past due." *Id.* (citing and quoting *Midland Funding, LLC v. Johnson*, ––– U.S. ––––, 137 S. Ct. 1407, 1414 (2017) (noting, as a general matter, that "discharge means that the debt (even if unenforceable) will not remain on a credit report").

The district court made the same ruling in this very case when denying Experian's motion to dismiss, finding that Mr. Mader "does not plead that the Loan is disputed; it pleads that the Discharge Order discharged the Navient Loan — a fact that the credit report does not accurately report." *Mader v. Experian Info. Sols., LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 264396, at *3 (S.D.N.Y. Jan. 17, 2020).

Similarly, in *DiBattista v. Selene Finance LP* (*In re DiBattista*), 615 B.R. 31 (S.D.N.Y. 2020), the Southern District of New York held that "[a] credit report that continues to show an amount past due, especially one that was prepared only after the discharge order, is inaccurate and misleading in a way that causes real harm . . . .". 615 B.R. at 43. In *Torres v. Chase Bank USA, N.A.* (*In re Torres*), 367 B.R. 478, 487-88 (Bankr. S.D.N.Y. 2007), the court held that "a credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has

11

reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable;" *see also Helmes v. Wachovia Bank, N.A.* (*In re Helmes*), 336 B.R. 105, 107 (Bankr. E.D. Va. 2005):

> A credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved;

*Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (holding that the assertion that a person owed a debt that, because of the discharge, in effect no longer exists, is "on its face ... false"); *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006) (holding that credit reports that are not updated to reflect a bankruptcy discharge are inaccurate); 16 C.F.R. 600 app. § 607(b)(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (*e.g.*, discharged, voluntarily repaid).").

Accurately reporting the facts about balances due and owing on debts after discharge is commonplace for Experian and credit reporting agencies. They do it every day on millions of consumer credit debts, mortgages, and other types of debts. *See, e.g.*, *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 769 (D. Minn. 2020) (discussing the propriety of post-bankruptcy reporting on consumer

credit); *Losch*, 995 F.3d at 945 (propriety of post-bankruptcy reporting on mortgages); *Crump v. Carrington Mortg. Servs., LLC*, No. 18 C 2302, 2019 WL 118490, at *4 (N.D. Ill. Jan. 7, 2019) (same); *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1217 (E.D. Cal. 2019) (propriety of post-bankruptcy reporting on scheduled monthly payments).

Indeed, Experian has extensive written procedures for post-bankruptcy reporting on many of those types of debts. (Appellant's Supplemental Appendix A69-A76). Experian just chooses to treat all student loan debt as non-dischargeable and still due and owing post-discharge, regardless of the factual attributes of the loan. In fact, an expert witness retained by Experian, Michael Turner, admitted that Experian's procedure does not take into account the factual attributes of a given loan, but instead treats all student loans as not discharged. (Appellant's Supp. App'x A-3 to A-5). By doing so, Experian is already making a reporting determination about the bankruptcy discharge. For loans like Mr. Mader's, Experian is purposefully creating factually inaccurate reports.

Experian's actions are especially reckless when you consider that there are readily available objective facts that inform whether the loan is non-dischargeable under § 523(a)(8)(A). Experian's guidelines already require information about whether a loan is governmental or private (Appellant's Supp. App'x A-37 to A-38 and there is a public list of every Title IV institution. Indeed, Experian already

collects some information about whether a loan is issued for attendance at a Title IV school or not.  (Appellant's Supp. App'x A-77 to A-78 and A-10).   It would not have been difficult for Experian to have procedures to determine whether Mr. Mader's private, non-Title IV loan was dischargeable.

Experian also argues that Mr. Mader should have first initiated an investigation with the furnisher before Experian can be liable under the FCRA. But that is not the law.  Parties can bring claims directly against a credit reporting agency under § 1681e(b) and there is no requirement that they first file a dispute or seek an investigation.  *Benjamin v. Experian Info. Sols., Inc.*, No. 20-CV-2466, 2021 WL 4260887, at *2 (N.D. Ga. Sept. 20, 2021) (collecting cases); *Frydman v. Experian Info. Sols., Inc.*, 2016 WL 11483839, at *12 (S.D.N.Y. Aug. 11, 2016).

Equally unavailing is Experian's argument that Mr. Mader should have first brought an adversary proceeding to determine the dischargeability of the debt.  The FCRA contains no such requirement.   Indeed, the bankruptcy court's discharge order warns creditors that the debtor's debts are discharged immediately upon entry of the order.  A debtor is not required to jump through any additional hoops to enjoy the fresh start promised by the Bankruptcy Code.  It is the creditor and credit reporting agencies who risk violating the law by reporting debts as not discharged without first determining whether the debt was discharged or not.  *In re Haroon*, 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("[A] creditor who attempts to

collect the debt proceeds at his own peril and accepts the consequences of his own actions.").

### C. Experian Did Not Maintain Reasonable Procedures to Assure Maximum Possible Accuracy as a Matter of Law.

Experian has not proven, as a matter of law, that it maintained reasonable procedures to assure maximum possible accuracy.

"The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances." *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693, 2016 WL 3538379, at *16 (S.D.N.Y. 2016) (citations omitted). "Assessing reasonableness [of a CRA's procedures] generally requires 'balancing the potential harm from inaccuracy against the burden on the agency of safeguarding against such inaccuracy.'" *Mader*, 2020 WL 264396 at *4 (citations omitted). A procedure is unreasonable if the "potential harm from inaccuracy" outweighs the "burden on the agency of safeguarding against such inaccuracy." *Wenning*, 2016 WL 3538379 at *16 (citations omitted).

In FCRA cases, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted); *see also Wenning*, 2016 WL 3538379 at *16 (same); *Gorman v. Experian Info. Sols., Inc.*, No. 07 Civ, 1846, 2008 WL 4934047, at *4

(S.D.N.Y. Nov. 19, 2008) (same); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (same).

Experian cannot show that it employs reasonable procedures to ensure maximum possible accuracy of its reporting because Experian does nothing to evaluate whether a private student loan has been discharged or not. Instead, as noted, it treats all private student loans as not discharged. (Appellant's Supp. App'x A-3 to A-7). That is not what a reasonably prudent credit reporting agency would do under the circumstances, nor can it be said to ensure maximum possible accuracy.

It is simply not reasonable to treat all student loans as non-dischargeable without any consideration of readily available objective facts like whether the loan program was funded by the federal government and whether the loan was issued for attendance at a Title IV institution.

Experian provides no proof that implementing procedures to prevent the inaccuracy would be too burdensome as compared to the harm caused by the inaccuracy, as required to evaluate reasonableness. Indeed, because Experian considers all student loans to be not discharged, it is guaranteed that many student loans will be reported inaccurately. There are literally millions of dollars of private loans issued by Navient alone that are private, for-profit loans that were made to students like Mr. Mader who attended non-Title IV schools. These loans are fully

16

dischargeable because they do not come within any of the terms of § 523(a)(8). Reporting these thousands of private discharged loans as still delinquent harms credit scores, causes higher costs of credit, the potential denial of credit, housing, and employment, and denies honest debtors the benefits of the fresh start, which is the fundamental purpose of the Bankruptcy Code.

Nor would it be too burdensome for Experian to implement reasonable policies. That is because Experian already has procedures for determining the attributes of student loans, already has procedures for determining whether other types of debts are discharged in bankruptcy, and has many other procedures in place for determining the accurate reporting of debts in complex situations. Indeed, much of what makes Experian's procedures particularly unreasonable is that Experian already collects the information necessary to make an accurate reporting decision. Experian tracks bankruptcies and discharges for every individual about whom it reports. Experian reports when a bankruptcy discharge occurs and reports the extent to which those debts were discharged in bankruptcy. Experian just chooses to ignore discharge orders for purposes of reporting on student loans. *See Myrick v. Equifax Info. Servs., LLC*, No. 15-CV-00562, 2017 WL 4798154, at *3 (E.D. N.C. Oct. 24, 2017) (finding that through PACER, defendant "had information in its possession that it could have used to verify whether the FFB account had been discharged in bankruptcy"). The district court

17

below already ruled on the motion to dismiss that "the failure to have a procedure in place to distinguish between the types of student loans that are dischargeable and those that are not is negligent." *Mader*, 2020 WL 264396 at *4.

Experian has not shown that implementing a procedure to accurately report on discharged student loan debts would be overly burdensome.

As noted above, Experian's guidelines already have codes for types of schools and whether certain loans are issued for attendance at a Title IV school. (Appellant's Supp. App'x A-77 to A-78, A-48 and A-10) (Q. "So you would agree with me that there are already some procedures in place that would take into consideration whether the loan is for a Title IV school or not? A: Yes. There is some recognition of a need to report different fields differently for different classifications of student loans, yes."); (Appellant's Supp. App'x A-21) (listing the different codes for various types of educational programs). Moreover, the federal government publishes a list of Title IV schools.

Experian also already has procedures that provide for:

- "[G]uidelines on reporting an account when a consumer files bankruptcy, but the student loan is not included in the bankruptcy discharge." (Appellant's Supp. App'x A-48).

- Coding and explanations to report if a federal student loan was discharged for false certification; (Appellant's Supp. App'x A-52).

- Coding to report whether a loan was forgiven under a teacher forgiveness plan; (*Id.*).

- Coding to report a previously defaulted loan as rehabilitated; (*Id.*).

- Coding to determine whether a debt has been reaffirmed in bankruptcy; (*Id.*).

- Coding to determine whether a reaffirmed debt is later rescinded in bankruptcy; (*Id.*)

- Coding for commercial debts so that they can be automatically updated to reflect a bankruptcy discharge without awaiting further information from a creditor; (Appellant's Supp. App'x A-29 to A-30 and A-11 to A-13).

- Coding to provide for access to all 50 state laws to report when a debt has been extinguished under state law as opposed to merely beyond the statute of limitations; (Appellant's Supp. App'x A-32).

- Coding to automatically determine whether a borrower had legal capacity to enter into a loan agreement and to suppress any such reporting; (Appellant's Supp. App'x A-28).

- Coding to automatically delete medical debts furnished by collection agencies if the date of default is less than 180 days from the date of reporting; (Appellant's Supp. App'x A-35).

Under these circumstances, Experian's procedures cannot be determined to be reasonably calculated to assure maxim possible accuracy as a matter of law.

Experian's other argument that it is immune from liability because it relied on Navient as a furnisher to provide information about the status of the loan is also wrong. The district court below already rejected this argument at the motion to dismiss stage and for good reason—context matters. "[R]eliance on a third party's inaccurate information does not render a defendant's procedures per se reasonable." *Mader*, 2020 WL 264396 at *4; *see also Wilson v. Corelogic SafeRent, LLC*, No. 14-CV-2477, 2017 WL 4357568, at *4 (S.D.N.Y. Sept. 29, 2017) (holding that a CRA may still be negligent even if the content of its credit reports is based on information from a reliable agency). "To accept [the] argument that [a CRA's] reliance on information obtained from a governmental agency, regardless of context, categorically insulates the CRA from liability, would severely undermine FCRA's remedial purpose.". *Mader*,2020 WL 264396, at *4 (quoting *Wilson*, 2017 WL 4357568, at *4)

As the Third Circuit held in *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010): "Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party."

Other courts to address this issue are in agreement. *Watson v. Caruso*, 18-cv-1666, 2019 WL 6463468, at \*10 n.13 (D. Conn. Dec. 02, 2019) ("The FCRA does not state that consumer reporting agencies should adopt 'reasonable procedures' only when they have reason to believe that the information on which they rely is inaccurate."); *Ocasio v. CoreLogic Credco, LLC*, No. 14-1585, 2015 WL 5722828, at \*3 (D. N.J. Sept. 9, 2015) (holding that merely relying on a furnisher is not reasonable where defendant "reiterated inaccurate information and did not independently verify the data it received."); *Wright v. Experian Info. Sols., Inc.*, No. 12-cv-03268, 2014 WL 4056961, at \*4-6 (D. Co. Aug. 14. 2014) (refusing "to absolve CRAs from FCRA liability merely because they rely on reputable third parties' inaccurate reporting" as a matter of law and requiring a factual determination of whether "there is an easily available procedure that would greatly improve accuracy of Defendant's reporting [of tradelines] such as Plaintiff's and do so at minimal cost.").

As noted in *Wright*, whether or not Experian's procedures are reasonable is clearly a question of fact and cannot provide an alternative ground for affirming the summary judgment decision below.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff-Appellant Michael Mader respectfully requests that district court's judgment be vacated.

Dated:  March 11, 2022              Respectfully submitted,

                                            **BOIES SCHILLER FLEXNER LLP**

                                         By:   */s/ Adam R. Shaw*
                                               Adam R. Shaw
                                               George F. Carpinello
                                               Jenna Smith
                                               Boies Schiller Flexner LLP
                                               30 South Pearl Street, 11th Floor
                                             Albany, New York 12207
                                             Tel:  (518) 434-0600
                                             Email: ashaw@bsfllp.com
                                                      gcarpinello@bsfllp.com
                                                      jsmith@bsfllp.com

                                             *Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF SERVICE**

I, Adam R. Shaw, hereby certify that on March 11, 2022, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF System. I further certify that the above document was served on all parties by the Court's CM/ECF system.

/s/ Adam R. Shaw
Adam R. Shaw

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

• It contains 4,879 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32 because:

• It has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Adam R. Shaw*